WILLIAM W. CHAPMAN, and others, plaintiffs in error, vs. WILLIAM L. GORDON, and others, defendants in error.

The owner of the land on which, the city of Griffin stands, laid it out, into streets, squares, and lots, some of the latter for building lots, some for public purposes, some for churches; according to a plan. Afterwards, the owner sold the building lots at auction, and caused it to be proclaimed at the sale, that the lots were sold according to that plan. Deeds were made to the purchasers, but nothing of the matter stated in the proclamation, was put into them. Afterwards, ten months or more, the owner made a deed in fee, to the Baptist church for the lot set down on the plan, for the Baptist church. In this deed, nothing was said, as to preventing the Baptist church, from using the lot for other purposes, than those of worship. The Baptist church was not, by agent, or otherwise, present at the auction. The Baptist church entered on the lot, erected a house of worship, and, some time afterwards advertised a part of the lot for sale, with a view to raise money to build a better house of worship on another part of the lot. Certain lot owners in the city of Griffin, filed a bill against the church, to prevent it from so doing. They claiming, that they had, in the facts aforesaid, an easement in the lot, that it was never to be used for any other purpose, than that of a place of worship.

*Held,* That the facts were not sufficient, to give them a title to such easement.

In Equity, in Spalding Superior Court. Tried before Judge CABANISS, May Term, 1859.

The facts of this case are fully stated in the following opinion of the Court:

*By the Court.*—BENNING J. delivering the opinion.

The complainants claim, in the lot in controversy, what we may call an easement, that the lot shall ever be used as a Baptist Church lot, and never be used as a lot for any other purpose.

The title on which, they rest this claim, is, according to their bill, whatever title can result from the following facts: The land on which Griffin stands, was by the Monroe Railroad and Banking Company laid off into lots, streets and squares, according to a certain plan, for a town, and subsequently became a town according to that plan—

the present town of Griffin. In the plan certain parts of the land were marked off for streets, and for a public square; certain parts for building lots, certain parts for a burial ground, a parade ground, a Court house; and certain parts as sites for churches. In 1840, the land, in lots, was set up at auction according to this plan. Copies of the plan were circulated among the persons present. Lewis L. Griffin, the President of the road, in a public speech, with the map in his hands, stated that the church lots aforesaid, "were set apart reserved and dedicated by said company, for the use of the public, for the purposes specified in said map, and that those purchasing business, or residence lots, would likewise purchase an interest in said streets, alleys and public lots," (meaning by public lots, to include the church lots,) to be used for the public purposes therein designated, and not otherwise; and the said Lewis L. Griffin, in the said speech aforesaid, stated, that as soon as the different denominations of christians should take possession of the lots dedicated to them, for the use of themselves and the public, that said company would make them deeds, to the same, conditioned, that said lots be used by said denominations and the public generally, as sites for houses of religious worship, but for no other purpose whatsoever. And the said Lewis L. Griffin, on the day aforesaid, and before, and afterwards, while acting as the agent of said company, in selling said lots, "stated that the object of said company in locating the lots in said city, for religious, educational, and other, public purposes, where they did locate them, was to confine the business of said city along, or near, the line of railroad" "running through said city, the entire length of Broad street, according to said original plan."

The auction then commenced and numerous building lots were sold to various persons; afterwards, all, or nearly all, of the remainder, were sold. The purchasers took possession, and thus was made, the town of Griffin.

The complainants are citizens of Griffin, owning lots with valuable improvements on them.

The lot set apart to the Baptist church, was accepted by the church, and in 1845 or 1846, it erected a house of worship on the lot. This lot the church has now subdivided into seven lots which it has advertised for sale.

The sale of the lot in this way, will injure the property of the complainants as they think.

The title of the complainants, is, according to their bill, the title, whatever it is, which results from these matters of fact.

The answer does not admit, that all of these matters are facts. It denies, that Griffin said, that the deeds to the churches should have the conditions in them, as charged in the bill. It admits, that Griffin said, that the church lots were to be dedicated for the use of the churches, but denies that he said, they were to be dedicated "*to the public* for the use of said churches." It denies that Griffin said, that purchasers would purchase "an interest in said church lots." The answer says, that the church received a deed conveying to it, the land in fee, and that the church is intending to sell a part of the lot, not the whole, with a view to raise money, for the buiding of a better house of worship, on another part of the lot.

There was no evidence going to show, that Griffin said, that the deeds to the churches were to have conditions in them, to prevent the churches from using the lots for any other purpose than worship.

There was evidence, that the deed made to the Baptist church, was "a common deed," and without any conditions. The date of the deed, was shortly after the Baptist church was organized, and, it was organized in March, 1841. This was nearly a year after the auction.

There was no evidence, that any of the deeds to any of the purchasers of building lots, contained clauses conveying the easement in question, to such purchasers.

These are the materials out of which the complainants are,

if they can, to deduce this title to what they claim, the ease-ment aforesaid, in this Baptist church lot.

Are they materials of out of which, such a title is dedu-cible?

They consist merely of the sayings of Griffin, at the auc-tion. And first, how are those sayings to be understood? As importing this:—"I" (the vendor) "now sell these lots, according to this plan which I hold in my hand, and *I bind* myself, that, as the lots, streets, and squares, now stand in the plan, so shall they forever stand in the city, like a petrified forest?" Or, as importing this; "I now sell these lots, according to this plan which I hold in my hands and I suppose that the city will remain according to the plan, but I make no warranty, as, what I say is but matter of opinion." The sayings are certainly susceptible of the latter import. And that is a natural and reasonable import, whilst the other, is extravagant and unreasonable. Subsequent conduct of all parties, favors the notion, that this was the import. If the first was the import, it was a matter making a part of the contract of purchase, and a most important part, and therefore, it was a matter, that should have entered into all the deeds made to purchasers, seeing that the statute of frauds requires agreements conveying land, to be in writing. Yet there is no such matter in any of those deeds. They, so far as appears, were deeds conveying unconditional fees, to each purchaser, to the lot he purchased, and conveying to him, nothing in the lots purchased by others. This of itself is strong, to show, that Griffin was *understood* as not speak-ing the language of *contract* but as speaking the language of mere *opinion.*

Say, however, that he was understood as speaking the language of contract, as binding himself, or the company, to keep the lots, &c., forever down to the plan, yet, he was only *speaking* and the statute of frauds, says, that words, merely spoken, in relation to land, are not a good founda-tion for an action against the speaker. True, there may be

things, to take such words out of the statute; as, fraud, or mistake; but unless there is something to take them out, they remain within the statute, and so, are of no effect. Is there any thing here, to take these words out of the statute. What is it, if there is? Did the deeds of the purchasers of building lots, fail, by fraud or mistake, to contain a stipulation, by which each purchaser of a lot, was to have an easement in every other lot, in every square, and in every street, that such other lots, and squares and streets should forever remain as they were? Nothing of the sort is pretended.

But, if it were possible, to make, out of the facts, a case of fraud as against Griffin or as against the Railroad Company, it is not possible to make out one as against innocent purchasers, from the company, without notice of the fraud or mistake. And such a purchaser, for aught that appears, was the Baptist church. Neither it, nor any agent of it, was present when Mr. Griffin spoke the words; the church could not be, for it was not even organized as a church, until some ten months after the auction. Still later was it, when the church took its deed, and that is "a common deed," containing no unusual stipulation. The church then, so far as appears, was an innocent purchaser. If so, it is not the church, if it is any one, that the complainants must look to, for redress.

True what the complainants claim is only an easement in this church lot, but there is the same law, for the conveyance of easements, that there is, for passing any other kind of realty incorporeal. There must be a writing, there must be a grant. True this grant may be implied from circumstances; as long user with the knowledge of the owner of the land in which the easement is claimed, but without circumstances, it cannot be implied. Cases of fraud stand on their own footing.

See *The King vs. the Inhabitants of Herndon on the Hill,* 4 *M. & S; Wood vs. Leadbetter,* 13 *M. & W.; Hewlins vs.*

*Shipman,* 5 *B. & C.* 221 ; *Fentiman vs. Smith,* 4 *East* 107 ; 5 *Taunt.* 125 ; 3 *Kent. Com.* 450.

Upon the whole, we think, that there are not materials in this case out of which, the complainants can make a title to the easement they claim.

Thus thinking, we can of course, find no error in the charge, or, in the verdict. The charge was, if anything, too favorable to the complainants.

It is needless to stop, to show, that if we are right, the charge was not erroneous. That is almost self-evident.

Judgment affirmed.