## PHILLIPS *v.* INGRAM *et al.*

1. It was not error for the court to admit the evidence of certain witnesses as set out in division 1 of the opinion.
2. In view of the pleadings, the evidence, and the general charge of the court, it was not error for the court to refuse the requests to charge as set out in division 2 of the opinion.
3. Certain excerpts from the charge of the court are not subject to the criticism that they are not authorized by the evidence.
4. The evidence authorized the verdict, and the court did not err in refusing a new trial.

No. 5315. JANUARY 11, 1927. REHEARING DENIED FEBRUARY 19, 1927.

Equitable petition. Before Judge Bell. Fulton superior court. January 30, 1926.

D. M. Ingram and eleven others filed a petition against William Phillips, and alleged substantially the following: Defendant owns and is in possession of a certain lot on the northeast corner of Elizabeth Lane and Main Street in the City of East Point, fronting on Main Street. This lot is in the subdivision known as Colonial Hills; wherein are the residences of plaintiffs in close proximity to the lot of defendant, some of their lots adjoining his lot, some being across the street, and others being within one hundred feet of his lot. All these lots were purchased from the Cobbs Land Co., subject to the following restrictions: (a) said lot shall not be used otherwise than for residence purposes; (b) no building shall be placed on said lot nearer to the street line than the building limit shown on said plat; (c) said property shall not be bargained, sold, or conveyed, rented or leased, to any person of African descent, and this provision is a part of the consideration of this deed; (d) said property is sold subject to the foregoing restrictions which are conditions of sale, and for a violation of the terms thereof by the party of the second part, or any person or persons holding under him, the right is expressly reserved to the Cobbs Land Co. to proceed by law to compel a compliance with the terms thereof. The restrictions which are incorporated in the deeds from the Cobbs Land Co. to the plaintiffs and to the defendant, or persons under whom he holds, are binding upon the defendant, and prohibit him from using the lot for any other

Appeal and Error, 4 C. J. p. 905, n. 41.
Covenants, 15 C. J. p. 1218, n. 12, 13.
Deeds, 18 C. J. p. 394, n. 19; p. 397, n. 53, 54.
Trial, 38 Cyc. p. 1615, n. 22; p. 1619, n. 38; p. 1711, n. 19.

purposes than for residence purposes; the restriction as shown by the plat of Cobbs Land Co. in Plat Book No. 4, pp. 186-189, in the office of the clerk of the superior court of Fulton County, fixes the building limit at twenty feet from the edge of the sidewalk, and this restriction is also binding upon the defendant. There is only a one-way sidewalk through this section, the railroad and Main Street running parallel, and the sidewalk on the west side of Main Street is the only sidewalk along said street. The defendant is now proceeding to build, and is actually constructing a "filling-station" on said lot so owned by him, for the purpose of selling gasoline and oil and other necessities used in the operation of automobiles; the building is also being erected for the purpose of selling drinks, lunches, and other refreshments, but particularly for a filling-station. The defendant has the framing of the filling-station commenced, has graded the lot, and has already procured a permit from the City of East Point for the erection of said filling-station. The erection of the filling-station will be in violation of the restrictions above referred to, in that the lot will be used for purposes other than residence, and will be in direct violation of restriction number 2 defining and fixing the building limit of twenty feet from the edge of the sidewalk. Plaintiffs purchased their lots and built residences thereon upon the faith that the building restrictions would be complied with, and that the subdivision would be used solely for residential purposes. Their homes will be affected by the erection of the filling-station upon said lot, in that their property will be greatly depreciated in value, and said section will be made undesirable for residential purposes. If the filling-station is permitted to be erected upon said lot, it will create a noisy and undesirable center, and will cause all the residences, including those of petitioners, to be undesirable for residential purposes, and to be greatly depreciated in value. At said filling-station gasoline and oil will be sold to automobiles and trucks at all hours of the day and night, and these sales will be accompanied by noisome, offensive, and disagreeable odors and by many disagreeable noises which continually go on around and near filling-stations at all hours of the day and night. The filling-station will take up the entire sidewalk along the front of defendant's lot, thereby bringing into constant use the sidewalk as a driveway for cars and trucks, which use will con-

stantly endanger the lives of plaintiffs and their children, thereby becoming a menace to plaintiffs and creating a nuisance. In connection with and as a part of the filling-station large tanks of gasoline and other large quantities will be stored and sold. The continual sale and transfer of gasoline from tanks to automobiles brings with it the danger of explosion, and will be dangerous to those who occupy homes near by. If the erection of the filling-station is permitted, the damages to each and all of the plaintiffs will be irreparable; the erection and operation of the filling-station will result in a multiplicity of suits by the owners of residences in said subdivision, to enforce the terms of said building restrictions, and to prevent the operation of the filling-station as a nuisance. Plaintiffs have no adequate remedy at law; and unless the defendant is enjoined from the erection of the filling-station, he will proceed with the construction of the same in violation of the terms of the restrictions hereinbefore set out. Plaintiffs pray that he be enjoined from erecting, constructing, and operating said filling-station upon said lot, or any part thereof, and from building any other structure or house for such purposes, etc.

By amendment plaintiffs allege that during the year 1911 H. L. Cobbs and others were incorporated as the Cobbs Land Company, and laid off, platted, and subdivided a certain described tract of land in lot 134 of the 14th district of Fulton County; that said property was known as Colonial Hills subdivision, as shown by a plat made and recorded in the clerk's office of the superior court of Fulton County; that at the time of the subdivision of the property the Cobbs Land Co., in order to sell lots therein to better advantage and to secure better prices, placed certain restrictions on all of the property as set out in the original petition, and intended to, and did, establish with reference to said property a general building scheme and development plan, and thereby induced plaintiffs and many other persons in said subdivision to purchase lots therein; that plaintiffs and others to whom lots were sold prior to the time the lot was sold to the defendant upon which he is seeking to construct a filling-station, bought upon the faith and representations from the Cobbs Land Co. that restrictions would be carried out as to the entire tract; that they bought lots in the subdivision and improved them by constructing thereon residences at a cost of from two to six thousand

dollars, and they and all other owners therein have strictly complied with the restrictions hereinbefore set out, and have never abandoned the plans or restrictions, but on the contrary when the exigencies of the case required it they have taken such steps as were necessary to enforce said restrictions; that the defendant and persons under whom he holds had notice of the restrictions before he purchased said lot, he being a resident of said Colonial Hills section for the past several years, owning several other lots in the subdivision, and having been an interested party to a former suit brought by a number of citizens of Colonial Hills subdivision against J. A. Sewell, to restrain him from erecting a filling-station on another lot in said subdivision, and he had full notice of such general building scheme and development plan; that plaintiffs were induced to buy said lots in said subdivision upon the faith and representations that the restrictions would be complied with by all purchasers in the subdivision, and had they known or had the slightest idea that the restrictions would ever be abrogated or violated, they would never have purchased the lots, as they purchased them for strictly residential purposes.

Phillips filed his answer, in which he admitted some of the allegations of the petition and denied others. He averred that on May 29, 1924, he bought his lot from the Colonial Hills Co., for the price of $1,800, and took a bond for title without restrictions of any kind, the obligor agreeing to make a deed in fee simple. He bought the lot for the purpose of erecting a filling-station, and began grading the same for that purpose more than a month before this suit was filed, and expended thereon a considerable sum of money. Upon the completion of the grading, about August 6, he began building. The material for the building thus far purchased has cost him about $400, the same has been cut and to a large extent built in, and he has expended a large sum for labor on the building. Plaintiffs live, as the defendant is informed and believes, at varying distances from defendant's lot, some of them three or four blocks away; none of them has ever advised the defendant of any claim of legal right such as is now set up, and none of them has ever informed defendant of any purpose to interfere or attempt to interfere with his plans. If they succeed in the purpose to enjoin him, it will involve practically a total loss to him of approximately $600 already expended. If any

temporary injunction is allowed, the delay and resultant expense to him will be two or three thousand dollars at least. The course of plaintiffs in standing by and seeing him incur said expense is and should be held and deemed an estoppel and a reason for refusing any injunction, either permanent or temporary.

The Cobbs Land Co. filed its answer, admitting some of the allegations of the petition, denying that plaintiffs are entitled to any relief against it, and averring specifically that some of the plaintiffs, if not all of them, hold deeds or other contracts of sale made by the Cobbs Land Co., but in explanation of this statement it avers that on February 25, 1911, a contract was entered into between Cobbs Land Co. and William H. Allen and Sidney E. Davidson, which contract was subsequently transferred to the Colonial Hills Co., under which the control of the property passed from the Cobbs Land Co. to the Colonial Hills Co., though the contracts of sale and deeds were required, by the contract of February 25, 1911, to be made by the Cobbs Land Co. until certain things were done in accordance with the contract. "It is not proper to say that any of said land was sold by the Cobbs Land Co. to said petitioners, except in the cases where the petitioners acquired their deeds or bonds for title or other contract prior to February 25, 1911." Phillips did not purchase his lot from the Cobbs Land Co. Its belief and recollection is that all instruments conveying, or contracting to convey, any of the lots in the subdivision made by it contained restrictions substantially in accordance with those set out in the petition. A contract was entered into between Cobbs Land Co. and William H. Allen and Sidney E. Davidson, by which Allen and Davidson undertook to subdivide the property and to sell the lots on certain terms and for certain considerations, as set out in the contract, and with the consent of this defendant the subdivision of said property was made and a plat was made, which plat is referred to in paragraph 2 of the amendment to the petition; and it is true that Allen and Davidson did establish, with the consent and knowledge of this defendant, a general building scheme and development plan. Whether the plaintiffs and others were induced to purchase the property on the faith of such building scheme and development plan, this defendant can neither admit nor deny, for the want of sufficient information.

Under the evidence and the court's charge, the jury returned a verdict for the plaintiffs. Phillips made a motion for new trial, which was overruled, and he excepted.

*Alexander & McLarty,* for plaintiff in error.

*Smith & Watson* and *Anderson, Rountree & Crenshaw,* contra.

HILL, J. (After stating the foregoing facts.)

1. Error is assigned in grounds 4 and 5 of the motion for new trial, because the court below admitted certain evidence over objection as set out in those grounds. Ground 4 is as follows; "The plaintiff asked the witness F. A. Smith whether, when he bought his lot, he relied on restrictions in the subdivision being carried out. To this question defendant Phillips objected that the witness should not be allowed to testify as to the contents of the restrictions, or to anything said to him about them; that they were not binding on the said defendant; and that witness should not be permitted to state his conclusion as to what was the legal effect of the restrictions. The objection was overruled, and the witness testified that he bought because it was a strictly white residence section. Thereupon said defendant moved to rule out the testimony so given, because not responsive to the question asked. The court thereupon said that there was an allegation in the petition to the effect that there was a general scheme in the subdivision for the purpose of selling the lots under certain restrictions, and that the evidence was competent to demonstrate whatever it might show on that point; and overruled the motion. Defendant now says that the necessary effect of the evidence offered was to testify to a conclusion on the part of the witness that the contract expressed in writings was a scheme on the part of the vendor, the Cobbs Land Co., made by it with the witness, to put the same restrictions on all the lots for the benefit of the witness, and that the court held and stated that such was the effect, whereas defendant Phillips was contending that the legitimate legal meaning of the written deed was merely a limitation imposed on the purchaser, and not a limitation on the vendor at all, and that it did not have the effect to impose such on the vendor, or on the purchaser of any other lot." In ground 5 of the motion it is stated that when the witness E. J. Durrett was testifying he was asked if it was his understanding that the subdivision was to be used strictly for residence purposes. To this question the defend-

ant Phillips objected on the same grounds as those stated in the 4th ground of the motion, above set out, as well as on the ground that the understanding of the witness was not competent to be given in evidence against him. The court sustained the last ground on objection, but held that it would be competent for the witness to answer what he bought it for, and what representations were made by the owner as to the plan or scheme, if there was any representation. Whereupon the witness said he bought it for a home, but said nothing as to any representations made to him by the vendor. The defendant contends that allowing the witness to testify as to his motives in buying, under the facts stated, was error, and necessarily implied that there was a verbal understanding, and that because of this fact the ruling was erroneous and prejudicial to the defendant.

We are of the opinion that the court did not err in admitting the evidence objected to. The petition alleged that at the time of the subdivision of the property the Cobbs Land Co., in order to sell lots therein to better advantage and for better prices, placed certain restrictions on all of the property, as set out in the petition, and intended to, and did, establish, with reference to said property, a general building scheme and development plan, and thereby induced plaintiffs and many others to purchase lots in said subdivision. See *Hancock* v. *Gumm,* 151 *Ga.* 667 (107 S. E. 872, 16 A. L. R. 1003) ; *Rosen* v. *Wolff,* 152 *Ga.* 578 (110 S. E. 877). It has been held that restrictions under a general plan adopted by the owner to sell lots may in equity be imposed on the lands, beyond the express restrictions contained in the deeds to the purchaser, on the theory of implied covenants; and that in a proper case equity will enforce against the covenantor's grantee a personal covenant imposing restrictions on the use of land contained in the grant thereof. 15 C. J. 1218, § 14.

2. Error is assigned, in grounds 6, 7, and 8 of the motion for new trial, on the court's refusal of certain requests to charge to the jury as follows: "The deeds put in evidence by the plaintiffs, and which appear to have been made by the Cobbs Land Co., contain certain conditions that have been referred to as restrictions, and are numbered 1, 2, 3, and 4. These restrictions are binding upon the lot named in the deed in which they occur, and upon the purchaser of that lot, and upon all who claim or hold

that lot by or through that purchaser. The purchaser can not disregard them, or use that lot or build on it in violation of the conditions stated. The restrictions do not, by their terms, refer to any other lot, or affect any other lot, than the one named in that deed. They are obligations imposed on the purchaser of that lot, and not on the purchaser of any other lot unless such other purchaser takes his deed with the same restrictions. They did not by their terms prevent the maker of the deed from conveying other lots to other purchasers free from restrictions." And, "The fourth of the restrictions shown in the deeds expressly retains in the Cobbs Land Co. the right to complain of any violation of the first three restrictions, and reserves the same right to any person whose interest is affected by a violation of these restrictions; but this does not mean that the purchaser of that lot, or any person to whom he sells it, can complain against the Cobbs Land Co. as to some other lot that may be sold without restrictions. Neither does it give to the purchaser of the lot the right to complain against a person who buys some other lot free from restrictions." And, "If the Cobbs Land Co. sold or bargained a number of lots with the restrictions that have been shown, and afterwards sold and conveyed the balance of the lots to the Colonial Hills Co., and expressly deeded them in fee simple to the Colonial Hills Co., and without any restriction or qualification on the title, the Colonial Hills Co. had the right, under the terms of their deed, to sell and convey the other lots to other purchasers, with all the same restrictions, or with some of the restrictions, or without any restrictions at all. If the Colonial Hills Co. did get such a fee-simple deed from the Cobbs Land Co. and did bargain a new lot unrestricted to the defendant, nothing in any deed shown by the plaintiffs gave them or any of them any right to complain of such new sale."

In view of the facts of this case and of the general charge of the court, we are of the opinion that the court did not err in refusing the requests to charge, for any reason assigned. These requests do not cover squarely the issues in the case, and are not applicable to the facts. Furthermore, some of the requests are covered by the general charge of the court. The court charged: "Plaintiffs allege and contend that they own certain lots upon which they have erected their homes in what is known as Colonial

Hills subdivision; that prior to their purchase of those lots Cobbs Land Co., common grantor as I will call it, had subdivided this property consisting of some eighty acres or more, and put it upon the market, subdivided it into lots, made a plat of it, had the plat recorded, and that Cobbs Land Co. sold the plaintiffs their lots, and, subdividing this property, advertised all the lots, or held the lots out to the public for sale, with certain restrictions, and among those restrictions were that the lots should only be used for residence purposes.  Plaintiffs allege and contend that they bought their lots in view of those restrictions, and that the defendant, Mr. Phillips, has bought a lot in that subdivision, and is undertaking to erect a filling-station on that lot in violation of their restrictions and in violation of their rights under their contracts with the common grantor; and they seek to enjoin him from the erection of the building, the filling-station, on one of those lots within that subdivision.  They contend that the Cobbs Land Co. prior to their purchase, as stated, platted this acreage, or this land, and that they bought their lots with the understanding that the other lots would be so sold and on the agreement with the Cobbs Land Co. that the other lots within that subdivision would also be sold with those restrictions attached to them.  The defendant, Mr. Phillips, contends that he bought his lot without any restrictions; that he bought it from the Colonial Hills Co., and that there was no restriction upon it; that he has a right to erect the filling-station, and that he had no notice of the restrictions placed upon the property, and that he had a right to use this property by the erection of a filling-station if he so desired.  Defendant also insists that the contracts, if there be such, containing those restrictions, do not affect his lot and his property, for the reason I have stated, and for the additional reason that the contracts between the other property owners (the plaintiffs) and the Cobbs Land Company do not affect his right, and it was not the general plan to so subdivide this property, and it was only a contract between the grantor and grantees. . . I charge you . . that where an instrument restricting the use, when executed in pursuance of a general scheme for the purpose of preserving the character of real estate as residence property by present owners and future purchasers of the same, the restriction creates an equitable servitude; and if you

find in this case that there was a general scheme by the Cobbs Land Co., for the purpose of preserving this acreage for residence purposes among other things, and it was held out to purchasers, and these plaintiffs purchased their property with that restriction and as a part of the consideration, then I charge you that any person with notice can not legally violate those restrictions; and if those restrictions are violated, then any one or more of the owners of lots within that subdivision would have a right to have it enjoined. I charge you, if you find that there was no general plan for the subdivision of this property, or that the plaintiffs did not purchase their lots with reference to any reservation in that plan, and the Cobbs Land Co. conveyed a portion of this property to purchasers with reservations and to others without reservations, and there was no such plan, then the contract between the Cobbs Land Co. and such purchasers would only bind the parties to those contracts, but would not bind others if the plan was as I have stated. I charge you also, that if some lots have restrictions imposed upon them and some have not, if the general plan has been maintained from its inception, if it has been understood and relied upon by all parties at interest, and it has been known to all purchasers subsequently, or by reasonable prudence could have been known, then it would be binding upon all purchasers equally; but if otherwise, it would not be. I charge you, . . that the burden of a restrictive agreement does not pass to the assignee where such assignee is purchaser of the land for value and without notice, actual or constructive, of the agreement. I further charge you that a purchaser of land is conclusively charged with notice of a restrictive agreement or covenant contained in a deed which constitutes one of the muniments of his own title; and generally this is true whether the deed containing such covenant is recorded or not. I charge you further that the grantee of a lot is chargeable with notice of a building restriction which was contained in the grantor's deed to an adjoining lot to another and covered both lots, where an examination of the records would have disclosed such covenant, and reasonable prudence required such examination to be made; and that a purchaser is chargeable with notice by implication of every fact affecting the title and discoverable by an examination of the deeds or other muniments of title of his grantor, and of every fact as to which the purchaser

by reasonable diligence ought to become acquainted." Mr. Alexander: "Would your honor be so good, in connection with that, to explain a little more fully about a deed which affects another lot, which your honor just charged?" The court: "I charge you, in this connection, if the examination of a deed affecting another lot does not disclose any general plan or scheme, that that examination would not of itself be notice of the reservation in other deeds. I charge you in this case, if you find from the evidence that the Cobbs Land Co., prior to the purchase of this land by these plaintiffs had subdivided this acreage and held it out to the public and to these plaintiffs for sale with the agreement and understanding that the reservations contained in the conveyances before made were to be made in all the conveyances to subsequent purchasers, that that agreement and contract established a covenant running with the land, and every subsequent purchaser, with notice of that agreement, either actual or constructive, would be bound thereby. I charge you, if you find from the evidence the facts as just detailed to you, and you find that neither Owens or the Colonial Hills Co., nor Mr. Phillips, had notice of this reservation in these deeds, that they would not be bound by it."

We are of the opinion that the foregoing charge fully and fairly stated the contentions of the parties and also the law applicable to the case, and therefore that the requests to charge were properly refused for the reasons set out above. See *Hancock* v. *Gumm,* supra.

3. Certain excerpts which were taken from the foregoing charge were excepted to on the ground that they were not authorized by the evidence. We are of the opinion that these charges as given were authorized by the pleadings and the evidence, and are not subject to the criticism directed against them.

4. Ground 16 of the amended motion is merely a recapitulation of other grounds which are dealt with in the foregoing divisions of the opinion.

5. The verdict is authorized by the evidence, and the court below did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*