## ATLANTA ASSOCIATION OF BAPTIST CHURCHES *v.* COWAN *et al.*

PER CURIAM. Applying the law as laid down in *Atlanta Association of Baptist Churches* v. *Cowan*, 183 *Ga.* 187 (188 S. E. 21), upon a former appearance of this case, the evidence adduced on the trial now under review authorized the verdict in favor of the plaintiffs; and the court did not err in overruling the motion for a new trial based upon the general grounds.

*Judgment affirmed. All the Justices concur, except Bell and Grice, JJ., who dissent; and Jenkins, J., disqualified.*

No. 11993. MARCH 14, 1938. REHEARING DENIED MARCH 17, 1938.

*Tye, Thomson & Tye* and *R. A. Edmondson Jr.,* for plaintiff in error.

*McElreath, Scott, Duckworth & DuVall,* contra.

BELL, Justice, dissenting. This is the second appearance of the case in this court. The first trial resulted in a verdict in favor of the plaintiffs. The defendant filed a motion for a new trial, which the court overruled, and the movant excepted. The judgment was reversed by this court, because of error in the charge to the jury. The charge gave the usual rule as to burden of proof in civil cases, whereas in a case of this type, in which a restriction is claimed against the right of an owner to use his property for any lawful purpose, the restriction must be proved beyond a reasonable doubt. Previous decisions had employed the expression "indubitably established," but in this case it was held in effect that this expression meant beyond a reasonable doubt. 183 *Ga.* 187 (supra). On the next trial the verdict was the same as before, and the association again moved for a new trial. The motion was overruled, and the association again brought the case to this court. This motion was based solely upon the general grounds, involving the question

whether the verdict was contrary to the evidence or was without evidence to support it. Applying the law of the case, the writer is of the opinion that the evidence did not establish the restriction beyond a reasonable doubt, and that the court erred in refusing a new trial.

From the preceding statement it will be seen that the subdivision described as Druid Hills was not in every part restricted to residential use. One section was set aside as a park, another for stores, and a third for a golf course. These were all in addition to a tract of 476 feet by approximately 1000 feet situated on the east side of Clifton Road and marked on a plat as being reserved. It was a part of this tract that was sold to the Atlanta Association of Baptist Churches. While it appears that the deeds to all residential lots contained restrictions to residential use, there is nothing to show that any deed contained a restriction or covenant as to other property. The land comprising the subdivision was developed by the Druid Hills corporation; and if the restriction claimed against the "reserved" area does in fact exist, it must necessarily arise from some contract, express or implied, by which the corporation itself agreed to the limitation. Since there was no express agreement to this effect, the only question is whether, in view of the deeds made by it with restrictive covenants against the grantees, there was an implied agreement by the grantor that the remaining land will be restricted to the same use. See, in this connection, Stephens Co. v. Binder, 198 N. C. 295 (151 S. E. 639); Sanborn v. McLean, 233 Mich. 227 (206 N. W. 496, 60 A. L. R. 1212, 1216); 15 C. J. 1218, § 14; 7 R. C. L. 1097, § 14. In *Kitchens* v. *Nolan*, 172 *Ga.* 684, 688 (158 S. E. 562), it was said: "The usual implied covenant is based on an actual pre-existing plat and subdivision, on the theory that the fact of making the plat, and formulating a set of restrictions alike to all lots of the subdivision, shows an existing intention to restrict all alike, and the law in such circumstances implies a covenant to carry out the scheme thereafter created and evidenced by the plats under which the property was sold and purchased." Thus, where a general building scheme is intended for the benefit of the vendees, the parts of the tract remaining in the hands of the vendor are ordinarily, by implication, subject to the same restrictions. Compare Sprague v. Kimball, 213 Mass. 380 (100 N. E. 622, 45 L. R. A. (N. S.) 962, Ann. Cas.

1914A, 431). This rule can not be properly applied in the present case, however, for the reason that it does not appear that there was any general scheme to restrict *all of the land alike* to residential use. The petition as amended alleged that "at the time [the plaintiffs] purchased their lots . . they were shown a plat" designating the area now in question as being "reserved." The allegations being to this extent favorable to the defendant, they are to be treated as admissions in the defendant's favor, binding upon the plaintiffs, whether or not evidence to the contrary may have been introduced by them. Code, § 38-402; *Royal* v. *McPhail,* 97 *Ga.* 457 (5) (25 S. E. 512); *Lydia Pinkham Medicine Co.* v. *Gibbs,* 108 *Ga.* 138 (33 S. E. 945); *New Zealand Fire Ins. Co.* v. *Brewer,* 29 *Ga. App.* 773 (6) (116 S. E. 922), and cit. Since the plaintiffs thus knew of the reservation at the times of their purchases, they were bound to know that the area so designated was not necessarily burdened in the same manner as the lots purchased by them. 54 C. J. 701; Sprague *v.* Kimball, supra, and see specially the editorial note in 45 L. R. A. (N. S.) page 965.

The plaintiffs further alleged, however, that in selling the various lots the Druid Hills corporation announced certain restrictions on the subdivision, including the restriction to residential use. They also alleged that the agent of the Druid Hills corporation represented to them that the tract shown on the plat as "reserved" would be developed into a park and would never be used for any other purpose; and that the plaintiffs, "relying upon said representations," purchased their various tracts. There was absolutely no evidence in support of these averments. Accordingly, we have in the record the undisputed fact that the area *was reserved,* with nothing to explain why or for what purpose, except what may be shown in the deeds and other documentary evidence and the undisputed fact that the subdivision was in the main a residential district. It might be suggested that the word 'reserved' implied that the tract so designated would not be sold or used for any purpose, but would remain in status quo until the expiration of the restriction period. This term, however, is not necessarily so limited in meaning. While it does mean to withhold or keep back, it may also connote some use or purpose, as distinguished from a retention for no use whatsoever. It is defined by Webster as "kept or set apart for future or special use, or for an exigency." One defini-

18

tion by the Century Dictionary is "kept for another or future use, retained, kept back." In Cleveland v. Bergen Building &c. Co. (N. J. Ch.), 55 Atl. 117, a part of the syllabus is: "Conveyances by the owners of lots referring to two maps in one of which a street is laid out, and in the other of which a strip therein is marked 'reserved,' do not amount to a dedication of the strip to public use," quoted in Harris v. City of St. Helens, 72 Or. 377 (143 Pac. 941, 945, Ann. Cas. 1916D, 1073). See also City of Eugene v. Lowell, 72 Or. 237 (143 Pac. 903); Gordon Metal Co. v. Kingan, 132 Va. 229 (111 S. E. 99). The word may also be used in the sense of "excepted." 4 Words and Phrases (2d), 334; 6 Id. (3d) 767. Even the plaintiffs do not seem to think that the reserved area was not to be sold or used for any purpose, since they introduced the fact, as material evidence, that one of them had purchased a portion of this tract—with restrictions, however. When it is remembered that words are to be taken in their ordinary significa- tion until something to the contrary appears, and in view of all the circumstances, it can not be said with certainty that the re- served area was not to be sold or used for any purpose whatever, consistently with the variable scheme adopted in this subdivision. Nor, since the lot sold to the defendant association was a part of the tract shown upon the plat as being reserved, and since it ap- pears without dispute that other parts of the subdivision were openly intended for other uses, including a golf course and a sec- tion for stores, can it be said beyond a reasonable doubt that the "reserved" area should be so restricted by implication as to pre- vent the building of the church as proposed by the defendant asso- ciation; there being no allegation or claim that such a church would be more objectionable to the ordinary resident than a golf course or commercial stores, or that there is any implied covenant exclud- ing such use upon that ground. "Estates and grants by implica- tion are not favored," and should be strictly construed. Code, § 20-704 (8); *Muscogee Mfg. Co.* v. *Eagle &c. Mills,* 126 *Ga.* 210 (3) (54 S. E. 1028, 7 L. R. A. (N. S.) 1139). Where the right of a complainant to relief by the enforcement of a restrictive covenant is reasonably doubtful, "to doubt is to deny." Whitehurst v. Bur- gess, 130 Va. 572 (107 S. E. 630); *Randall* v. *Atlanta Advertising Service,* 159 *Ga.* 217 (125 S. E. 462). While one of the plaintiffs, a physician, testified that the traffic and noise would be increased

and made disturbing at times when he had to sleep, the unusual situation of this one individual would not show an implied covenant against the use of this property for church purposes; nor did the petition complain upon any such ground. See Code, § 72-101; 46 C. J. 677.

Nothing said in this opinion is intended even to intimate that the area referred to as being reserved may be held free from all restrictions whatsoever. It appears from the record that the Druid Hills subdivision is for the most part a residential section which has been developed and promoted by the Druid Hills corporation. There may perhaps be an implied covenant that the lands retained will not be used for any purpose that could be considered as reasonably objectionable in such a neighborhood, or as more objectionable than those uses to which parts of the subdivision were already devoted when the plaintiffs purchased their residential lots; but these questions are not involved in the instant case, since it does not appear from the record that the reserved area was restricted absolutely to residential use, and this is the only question raised by the plaintiffs in their petition. If the property was not subject to such restriction while it was owned by the Druid Hills corporation, it is immaterial that the association may have exacted a contract for its protection on that question, because an agreement of this nature would not result in imposing a restriction which did not exist before. The present case differs on its facts from *Phillips* v. *Ingram,* 163 *Ga.* 580 (136 S. E. 785).

For the reasons stated, the writer is of the opinion that the evidence was not sufficient to support the verdict in favor of the plaintiffs, and that the court erred in refusing a new trial. He therefore respectfully dissents from the judgment of affirmance. Mr. Justice Grice concurs in this opinion.