JONES *et al.* v. LANIER·DEVELOPMENT COMPANY *et al.*
LANIER DEVELOPMENT COMPANY *et al.* v. JONES *et al.*

888

Nos. 13383, 13384. SEPTEMBER 26, 1940.
REHEARING DENIED OCTOBER 16, 1940.

*McElreath, Scott, Duckworth & DuVall,* for plaintiffs.

*Tye, Thomson & Tye* and *Bryan, Middlebrooks & Carter,* for defendants.

JENKINS, Justice. This was a suit by residence owners in the western section of the Druid Hills Heights Subdivision in Fulton County, to enjoin erection of a theater building, as violative of alleged building restrictions limiting the lots to residential purposes and fixing building lines. The previous refusal of an interlocutory injunction was reversed by this court. *Jones* v. *Lanier Development Co.,* supra. In the present trial, where the judge directed a verdict for the defendants, the plaintiffs except to the refusal of a new trial on this ground, for particular reasons assigned, as indicated in the opinion and syllabus. The essential pleadings, plats, and documentary evidence appear in the former decision. Other facts, not sufficiently shown in the syllabus or opinion, follow. Under the stipulations and the deeds in evidence, the Metropolitan Land Company acquired its title in October, 1921, and executed deeds to Gardner and others in 1922 and subsequently. The defendants claim under Gardner. Deeds to several of the 50-foot lots contained express restrictions limiting their use "for residence purposes only," and fixing varying building lines as stated.

However, none of the deeds to 25-foot lots contained any residence restriction. As to the building line on one of the recorded plats, a continuous dotted line was shown, with varying distances from the curving street. The plat was drawn to a scale of 60 feet to the inch. While it showed that this section of the subdivision contained mostly 50-foot lots, it showed some 14 of the 25-foot lots, where the property narrowed along University Drive; and these lots were also of decreasing depth. In front of three or four of such lots the building line ended, coinciding with the street line. As to the express building-line restrictions, shown on the plat or in the defendants' deeds, the testimony showed without dispute that, so far as controlled by the *plat,* the foundations of the building sought to be enjoined were about three feet back of such a building line. But according to the express provisions in the deeds, there was a slight violation, as set forth in the opinion. In the cross-bill of exceptions, the defendants assign error only on the admission in evidence of the sales contract, dealt with in the former decision and the present syllabus.

■ ■ All questions raised in these direct and cross-bills of exceptions having been determined by the previous decision adversely to the contentions of the plaintiffs, except those decided in the last two divisions of this syllabus, only division 3 and the last paragraph of division 4 require elaboration.

■ With regard to the alleged implied restriction, that all lots in the subdivision, including the 25-foot lots of the defendants, should be used exclusively for residential purposes, while it is the rule that "restrictions under a general plan adopted by the owner to sell lots may in equity be imposed on the land beyond the express restrictions contained in the deed to the purchaser, on the theory of implied covenants," yet also, "as a general rule, the owner of land in fee has the right to use his property for apartments and stores, if he so desires; and any claim that there are restrictions must be clearly established" (*Kitchens* v. *Noland,* 172 *Ga.* 684, 688, 158 S. E. 562; *Phillips* v. *Ingram,* 163 *Ga.* 580, 136 S. E. 785; *Atlanta Association of Baptist Churches* v. *Cowan,* 186 *Ga.* 10, 196 S. E. 780); and in a prior decision of the last stated case, where implied restrictions under an alleged general plan were sought to be shown, it was held that "the burden was upon the plaintiffs to prove their case by more than a preponderance of the evidence,"

that in such a case of alleged implied general restrictions, it was error to charge that preponderance was sufficient, and "the better practice would be to charge that such restrictions must be proved beyond a reasonable doubt, as is proper in cases" like others there cited. Under these rules, the evidence for the plaintiffs in this case was insufficient. While there was documentary evidence, as to the 50-foot lots, showing that deeds to some of the plaintiffs and other purchasers contained express restrictions, limiting their respective lots to residential purposes, there was no such evidence that the deeds to the 25-foot lots, including those of the defendant on which the proposed theater was to be constructed, contained any express restriction. The recorded plats and the sales contract did not show or indicate such a restriction. Nor was there testimony that might be taken as showing the existence of such a "general plan" on the part of the developers, unless it be found in the testimony of one of the plaintiffs: that he bought 2 of the 50-foot lots at an auction sale conducted on the property in 1921, when it was put on the market; that Mr. J. L. Turner and his wife had charge of the sale, and they then stated "this was a highly restricted residence section;" and that the father of J. L. Turner was J. T. Turner, who by the testimony of another plaintiff "was connected with the Metropolitan Land Company," the original developer and the grantor to the defendants' predecessor in title. This testimony wholly failed to show the existence of any implied general restriction, which would preclude the defendants from using their 25-foot lots for other than residential purposes. Accordingly, on this issue of the case, it was proper to direct a verdict for the defendants.

■ (b). With regard to the evidence as to the alleged express building line restrictions in one of the recorded plats and in deeds to the defendants or their predecessors in title, in the former interlocutory hearing, in which the refusal to grant an interlocutory injunction was reversed by this court, the sworn petition, alleging that the proposed theater building violated the building line indicated by the plats was in evidence, and there was nothing to show the location of the building with respect to the dotted building line on one of the plats when scaled 60 feet to the inch, as stated in the plat. At the present trial, however, the defendants introduced specific evidence, showing such a scaling in feet as to distances from the street of the dotted building line across the lots involved,

and showing without dispute that their proposed theater did not extend beyond the building line so far as indicated by the *plat*. Therefore, on that issue, a finding was demanded for the defendants.

However, with regard to the alleged express restrictions in the defendants' *deeds,* it appears that the proposed building covered several 25-foot lots, numbered 1D, 1E, 1F, 2A, 2B, 2C, and 2D in Block E of the subdivision; and that, while the deeds to lots 1E and 1F contained no restriction, others contained restrictions, 1D, 2½ feet; 2A and 2B, 10 feet each; and 2C, 15 feet. There was evidence that the foundation of the proposed theater extended beyond the building lines as thus fixed. In the brief for the defendants in error, it is conceded that, under the evidence, "the proposed building does slightly violate the express building line" as to four lots, 2A, 2B, 2C, and 2D; and a diagram attached to the brief also shows such a slight violation. Under the previous decision of this court, and the general pleading of the petition that "said building by said defendants is in violation of *the restrictions* on said property," the plaintiffs were entitled to the benefit of such *express* restrictions; and under the evidence, and on this ground alone, it was error to direct a verdict for the defendants and to refuse a new trial.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*