26493. WESTHAMPTON, INC. v. KEHOE et al.

UNDERCOFLER, Justice. This appeal is from an order granting an interlocutory injunction prohibiting Westhampton, Inc. from selling, developing or constructing improvements upon a tract of real estate unless in accordance with certain restrictive covenants. *Held:*

The trial court made the following findings of fact and conclusion of law:

"Findings of fact. 1. The plaintiffs, in addition to others who testified by affidavit, are residents of a subdivision in Columbia

County, Georgia, known as Westhampton, which was developed by Westhampton, Inc., and contains, or will contain, 159 lots covering 69.15 acres.

"2. Westhampton Subdivision has to date been developed in four parts or sections and the plaintiffs all purchased homes in the first three sections, which cost from a minimum of $19,900 to approximately $32,000.

"3. Westhampton, Inc. established virtually identical protective covenants for the first three sections of Westhampton which required that all homes in said sections contain a minimum of 1,300 square feet and cost a minimum of $13,000 based upon cost levels prevailing on the date said covenants were recorded in the public records.

"4. The fourth section of Westhampton to be developed, known as 'Section A, Part II' was platted August 26, 1970, and protective covenants for it were recorded October 5, 1970. Said covenants differ from those for the first three sections in that they contain no minimum cost requirement and lower the minimum square footage to 1,050.

"5. Westhampton Subdivision has been developed pursuant to an overall development plan or plat for all 159 lots covering 69.15 acres, which plat, while unrecorded, was exhibited to purchasers of homes, including some of the plaintiffs, prior to purchase.

"6. The evidence shows that defendant Westhampton intends to develop the fourth section and other undeveloped portions of the 69.15 acres so that homes financed under a government plan of subsidy financing known as 'FHA 235' can be used.

"7. Defendant Jernigan purchased three lots in the fourth section of the subdivision on October 8, 1970, on which it has begun construction of homes which contain less than 1,300 square feet, and said homes are under contracts of sale to customers for prices in the range of $18,000 and are to be financed under said program of subsidy financing known as 'FHA 235.'

"8. Prior to the purchase of said lots by Jernigan, the president of that corporation was informed by a real estate agent that the residents of Westhampton intended to prevent the construction of 'FHA 235' type homes, that there was a dispute as to the application of restrictive covenants, and that he should investi-

gate before proceeding. Jernigan did thereafter inquire of his attorney concerning the covenants. Furthermore, prior to the sale to Jernigan, the president of Westhampton was told, at a meeting of residents, that they intended to take legal action to prevent the construction of 'FHA 235' homes which did not meet the covenants applicable to the first three sections of Westhampton.

"9. None of the plaintiffs purchased homes directly from Westhampton; however, one resident, Mr. Wagoner, purchased an additional lot directly from Westhampton and was told by Dr. Holmes, the president, that the same covenants applicable to his house would be applicable to the additional lot, and the evidence, while conflicting, indicates that a similar representation was also made as to all other property in Westhampton.

"10. Several of the plaintiffs purchased homes for which Southern Finance Corporation or Martinez Realty Company acted as sales agents. These plaintiffs were shown a copy of the overall development plan by the employees of Southern Finance Corporation or Martinez Realty Company. One plaintiff was shown the plan in the office of Southern Finance. While conflicting, the evidence indicates that many of the plaintiffs were told by said employees and agents that similar covenants would apply to all of Westhampton; that all houses in Westhampton would contain a minimum of 1,300 square feet and cost at least $13,000; that the covenants applicable to the first section would apply to all of Westhampton; and that future portions of Westhampton would be of at least equal or of higher quality than the first section.

"11. Southern Finance Corporation assisted Westhampton in the development and promotion of the subdivision and helped obtain approval of it by the Federal Housing Administration and the Veterans Administration. A sign at the entrance to the subdivision states that Southern Finance Corporation is the 'sales agent,' and another sign advertises the subdivision under the name of Martinez Realty Company. Southern Finance agents and those for Martinez Realty Company handled many of the sales to the plaintiffs. William A. Garrett, the president of Southern Finance Corporation, is a member of the architec-

tural control committee established by Westhampton under the covenants for the first four sections of the development.

"12. The plaintiffs relied upon the representations made to them as to future plans for Westhampton in purchasing their homes.

"13. Manus A. West, who, the evidence shows, built a number of homes in Westhampton, and was, until March, 1968, an officer, director and stockholder in Westhampton, made representations to some of the plaintiffs similar to those made by the real estate agents.

"Conclusions of Law. 1. The grant or denial of an interlocutory injunction rests in the sound discretion of the court. In making its decision, the court must consider the convenience of the parties. There should be a balance of conveniences and consideration given as to whether greater harm might be done by refusing than by granting the injunction. Where the evidence is conflicting, and it appears that the injunction, if granted, would not operate oppressively to the defendant, but that, if denied, the complainant would be practically remediless in case he should thereafter establish the truth of the contentions, discretion should be exercised to preserve the status. Jones v. Lanier Development Co., 188 Ga. 141 (2 SE2d 923); Atkinson v. England, 194 Ga. 854 (22 SE2d 798).

"Upon consideration of an interlocutory injunction, all fine points or nice distinctions must not be resolved; and in a case seeking to impose restrictions on land such as this one, the plaintiffs must prove their position beyond a reasonable doubt at the jury trial; however, said rule does not apply on consideration of an interlocutory injunction. Atkinson v. England, 194 Ga. 854 (22 SE2d 798).

"2. Generally, oral restrictions as to the use of land are valid and enforceable. Caffey v. Parris, 186 Ga. 303 (197 SE 898); Atlanta Association of Baptist Churches v. Cowan, 186 Ga. 10 (196 SE 780).

"3. A general building scheme and development plan in a subdivision for the purpose of selling lots under the restrictions is binding and enforceable, though not embraced in the deeds. Restrictions under a general plan adopted by an owner to sell lots may, in equity, be imposed on lands beyond the express

restrictions contained in deeds on the theory of implied covenants. Where a general scheme of development exists, the grantees of lots subject thereto may enforce the restrictions against each other, although such restrictions are not embraced in the defendant's conveyance, where the owner sought to be subjected to the restrictions purchased with notice thereof. Atkinson v. England, 194 Ga. 854 (22 SE2d 798); Kitchens v. Noland, 172 Ga. 684 (158 SE 562); Phillips v. Ingram, 163 Ga. 580 (136 SE 785).

"4. While in conflict, sufficient evidence has been presented to show, for purposes of an interlocutory injunction: (a) the establishment of a general building scheme and development plan by the defendant Westhampton which relates to the quality and size of the homes to be built throughout the subdivision; (b) that the plaintiffs relied upon certain oral representations and other evidences of said scheme relating to the quality of said subdivision in making purchases of homes; (c) that the representations were made by apparent agents of the defendant Westhampton; and (d) that defendant Jernigan purchased with notice of the restrictions.

"Furthermore, the evidence shows that the covenants for the fourth section of the subdivision have been lowered in quality and that construction has already started on homes containing less square feet and of lower value than those owned by the plaintiffs, and that similar construction or development is intended for the remainder of the subdivision, all of which would diminish the value of the plaintiffs' homes.

"5. The plaintiffs will suffer immediate and irreparable injury unless the defendants are temporarily enjoined and the status preserved so that the issues and contentions may be presented fully before a jury. The denial of an interlocutory injunction to the plaintiffs would leave them practically remediless in the event they should hereafter establish their contentions at a jury trial because the diminution in value to their homes would have already occurred as the defendants completed the construction and sale of lower quality homes which do not comply with the plaintiffs' covenants. The defendants, however, will not be oppressed by the preservation of the status quo, and will

have a remedy at law in the event they should ultimately prevail and are found to have been wrongfully enjoined."

The trial court's findings of fact are supported by the evidence and its conclusions of law are correct and so well stated that they are adopted as the opinion of this court.

*Judgment affirmed. All the Justices concur.*

ARGUED APRIL 13, 1971—DECIDED MAY 20, 1971.

*Cumming, Nixon, Yow, Waller & Capers, Richard E. Allen, Thomas B. Burnside, Jr.,* for appellant.

*Wyckliffe A. Knox, Hull, Towill, Norman, Barrett & Johnson,* for appellees.