26638.   CATO et al. v. ENGLISH.

ARGUED SEPTEMBER 15, 1971—DECIDED OCTOBER 7, 1971.

*Long & Siefferman, Floyd E. Siefferman, Jr.,* for appellants.

*Albert B. Wallace,* for appellee.

ALMAND, Chief Justice. This appeal is from an order, certified by the trial judge for review, denying the appellant's motion for a summary judgment.

The complaint in two counts of Bill W. English against William C. Cato and Carriage Colony, Inc., in substance alleged in Count 1 as follows: That English is the owner of Lot 4 of Block "B" of Unit III of Carriage Colony subdivision, which is one of eleven (11) single-family residential lots in Block "B"; that defendant Cato, individually and through one or more corporations owned and controlled by him, is the developer of Units II, III and IV of Carriage Colony subdivision; that Cato, individually or through the defendant corporation, owned an additional tract of land immediately west of English's parcel known as Tract "A"; that English, before he bought his lot in Unit III, was shown by an agent of Cato residential subdivision plats of Unit III and the plat or survey of residential building lots to be offered by the defendant Cato in the future on the parcel known as Tract "A"; that said agent represented to English that all of the blocks, including Tract "A", would be developed for single family residences; that English, acting on the promise of Cato to develop said Tract "A" for single-family residences, agreed to and did purchase Lot 4

of Block "B" of Unit III with the residence thereon for the sum of $24,000; that, despite the assurance of Cato that he would develop Tract "A" for single-family residential purposes, he, through the defendant corporation, is undertaking to construct eighty-one (81) multi-family apartments on Tract "A"; that the defendants are in the act of breaching their contract; and, that unless they are restrained, English will suffer irreparable damage.

Adopting the material allegations in Count 1, the plaintiff English in Count 2 alleged that, if the defendants are permitted to breach their contract with him by building multi-family apartments on Tract "A", his property in Lot 4, Block "B" of Unit III will be reduced in value to $29,000 from a fair market value of approximately $36,500.

The prayers of the complaint were: (a) for temporary and permanent injunction to prevent the defendants from developing Tract "A" as multi-family residences, and (b) for damages in the sum of $7,500.

The defendants in their answer denied the material allegations of the plaintiff.

The defendants filed a motion for a summary judgment based upon the pleadings, answers to the interrogatories and affidavits. The motion was denied and the appeal is from this order.

■ The complaint in two counts seeks multiple relief, i.e., for injunction and damages. The motion for summary judgment is for a judgment in the defendants' favor upon the whole case. If there is a genuine issue as to any material fact, relating either to the prayers for injunctive relief or for damages by reason of the alleged breach of contract, it was not error to deny the motion.

■ "Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action." *Code Ann.* § 105-302.

"A material misrepresentation constituting *actual fraud* may give rise to an *independent* action in tort for deceit, to recover for damage thus occasioned." *Penn Mutual Life Ins.*

*Co. v. Taggart,* 38 Ga. App. 509, 511 (144 SE 400). (Emphasis supplied).

Ordinarily the question as to whether the party complaining of the alleged fraud has used proper diligence to discover the alleged fraud is for the jury. *Braselton Brothers v. Better Maid Dairy Products,* 222 Ga. 472 (150 SE2d 620).

In his answer to interrogatories, the defendant Cato stated that he owned fifty percent (50%) of the stock in defendant Carriage Colony, Inc., was president of the corporation, and supervised the land subdivided by Carriage Colony.

The record contains the affidavit of Howard Bolton who states: That in 1963-64 he was employed as a real estate agent and salesman by Tri-City Realty & Mortgage Co., of which W. C. Cato was president; that he was active in the sales of residential lots in Carriage Colony subdivision; that W. C. Cato was president of C. M. Construction Co. (the company that conveyed the lots to English); that W. C. Cato had Tract "A" surveyed and that a preliminary plat of survey made on said property was affixed to one of the walls of a model home located on Ben Hill Avenue which contained the operational offices for Tri-City Realty & Mortgage, Inc., C. M. Construction Company, Inc., and Carriage Colony, Inc.; that the sale of the residential lots in Carriage Colony subdivision was assigned by W. C. Cato to affiant and another salesman; and, that as a result of said assignment, affiant sold approximately fifty-four (54) single-family residential lots.

The affidavit of Tom McCarvey shows: That he was the agent of Tri-City who sold the lot to English; that he was instrumental, either directly or indirectly, in selling several of the residential lots which were developed out of the entire tract of land owned by Carriage Colony, Inc.; that there were one or more plats in existence as to Tract "A" showing said tract divided into residential building lots; and, that one copy of said plat was affixed to a wall in the model home owned by Carriage Colony, Inc., on Ben Hill Avenue, and used by Carriage Colony, Inc., Tri-City Realty & Mort-

gage, Inc., and C. M. Construction Company for office and sales purposes.

In his affidavit the complainant English stated: That before he bought the subject lot, W. C. Cato stated to him that he, by and through Carriage Colony, was the owner of the subject property and all lots adjacent thereto and that they were being developed for use as single-family residences; and, that on the wall in the model home on Ben Hill Avenue was located a plat of survey showing the Carriage Colony subdivision and showing specifically single-family residential lots which had been surveyed and platted in that area heretofore designated as Tract "A."

It is plainly apparent from the recitation of the above that there exists a genuine material issue of fact on the question of whether the defendants, either or both, are liable for damages by reason of the alleged tort.

Whether there was a material issue of fact on the prayers for equitable relief need not be decided since there was a material issue of fact on the prayer for legal relief.

*Judgment affirmed. All the Justices concur, except Felton, J., who dissents.*

FELTON, Justice, dissenting. ". . . Any contract for sale of lands, or any interest in, or concerning them." Such a contract, to be binding on the promisor, must be in writing, signed by the party to be charged, or someone by him lawfully authorized. *Code* § 20-401 (4). The contract herein alleged to have been breached was not in writing, it was not signed by the owner of tract "A," and it concerned an interest in tract "A" and the lot owned by the plaintiff in a different and separate tract of land. The only way under the law which the promise made to restrict lots in tract "A" to residences could be legally made would have been for the owner of tract "A" to put a contract or plat on record so restricting the tract. This would have served a dual purpose: it would have protected owners of lots in the subdivision in which plaintiff's lot was located from apartment use of the tract and it would have similarly protected the lots of all owners of lots in tract "A." If this had been done, the

plaintiff would not have been wronged as complained of in this action, and it also would have protected a transferee of the plaintiff, who is not protected under the oral contract alleged. The Statute of Frauds is not just an ornament, as shown by the numerous decisions of our courts. It was said in Cottrell v. Nurnberger, 131 W. Va. 391, 411 (47 SE2d 454, 5 ALR2d 1298): "To sanction the *substitution* of *verbal declaration* for *written instruments* in the *creation* or the *transfer* of *certain interests and estates in land* is to *reject the wholesome experience of the past* for *uncertain memory* and *unrecorded expression* and, in so doing, to *adopt a course which is necessarily fraught with danger.* This risk should never be undertaken except to prevent, in a clear case, the injustice which results from fraud or inequitable conduct; *and whenever doubt on this point exists the requirements of these statutes should be strictly adhered to and enforced."* (Emphasis supplied). See Restatement, Property, Vol. 5, p. 3165, § 522, which reads: "(1) Except as stated in Subsection (2), a promise that certain land will be used in a particular way is subject to the provisions of the statute of frauds requiring promises which create interests in land to be in writing signed by the promisor. (2) A promise by the grantee in a deed poll, which promise is contained in the deed, that the land conveyed thereby will be used in a particular way is not subject to the provisions of the statute of frauds requiring promises which create interests in land to be signed by the promisor."

The rulings in *Columbia Valley Recreation Center v. Massie,* 223 Ga. 151 (154 SE2d 215) control here. In Division 2 this court said: "The express covenants are shown by the exhibits not to cover the swimming pool lots and can not be made to cover them by deceit." This statement seems to "cover" the question in this case.

The writing necessary to restrict the use of real estate, is a material term of such a contract, is not present in this case, and cannot be supplied by parol agreement. This court has applied this principle in numerous cases, even if the facts in the cases differ from this one. *Taylor v. Smith,* 221

Ga. 55 (142 SE2d 918); *Awtrey v. Awtrey,* 225 Ga. 666 (171 SE2d 126); *Sanders v. Vaughn,* 223 Ga. 274 (154 SE2d 616); *Chapman v. Gordon,* 29 Ga. 250; *Kitchens v. Noland,* 172 Ga. 684 (58 SE 562); *Stonecypher v. Ga. Power Co.,* 183 Ga. 498 (1) (189 SE 13).

*Westhampton, Inc. v. Kehoe,* 227 Ga. 642 (182 SE2d 430) is distinguishable from this case in that in that case actual written restrictions were imposed by grantor-defendant on parts of the whole tract of land.

We have not been cited to a case supporting such a claim as the plaintiff makes in this case, nor have I found one or heard of one.

The motion of the defendants for summary judgments should have been granted.