ENGLAND *et al.* v. ATKINSON *et al.*

No. 14535. JUNE 11, 1943.

182

*Brandon, Matthews, Smith & Nall,* for plaintiffs.

*Tye, Thomson, Tye & Edmondson,* and *Mitchell & Mitchell,* for defendants.

ATKINSON, Justice. About 1924 or 1925 the estate of J. A. Coursey sold various lots in what is known as the J. A. Coursey subdivision in Fulton County. Following the sale many of the lots were owned by a small group of people, to wit, W. A. Jones, T. C. Shreve, Mrs. L. L. Shreve, H. G. Hubbard, and E. L. Awtry. These parties owned lots individually, and also owned other lots jointly with one another; some being owned by Shreve and Jones, Shreve and Hubbard, Shreve and Mrs. Shreve, and Shreve and Awtry. The proportion of all the lots in the subdivision owned by the above parties is not made definite. They did not own all the lots, but a substantial number. The instant suit was brought by J. C. England and others, parties who purchased lots from the above-mentioned owners, against John L. Atkinson, Mrs. L. L. Shreve, W. A. Jones, H. G. Hubbard, and E. L. Awtry. The suit is primarily directed against Mrs. L. L Shreve as grantor, and John L. Atkinson as grantee, in a deed to one of the lots, praying for cancellation of the deed, and for injunction against Atkinson occupying the premises. The suit is based upon the allegations that about 1924 or 1925 the owners of the lots mentioned above had an agreement among themselves, that they would restrict the sale and use of such lots as they owned to white people, and no lot would be sold to a negro; and that, notwithstanding this agreement, one of the lots had been sold by Mrs. L. L. Shreve on September 26, 1941, without any restrictions, to John L. Atkinson, a negro, who was preparing to build a house thereon and occupy it as a residence. The deed to Atkinson contained no restriction, nor was any restriction incorporated in any deed to his predecessors in title. The plaintiffs sought to establish two things, (a) that Mrs. Shreve was bound by a contract, entered into by those named above, not to deed any lot in this subdivision to a negro, and (b) that Atkinson bought the lot with knowledge that the lot was restricted against the sale to a negro. The subdivision contained approximately seventy-five lots in various sizes from 50 to 75 feet front by 150 to 200 feet in depth, and also contained five tracts each containing

about three or four acres. There was no evidence as to the number of the lots restricted or the number of those unrestricted. There was evidence that at the time of the sale of the lot to Atkinson two other negroes had purchased lots, erected dwellings, and resided thereon. Purchasers of lots after 1924 or 1925 testified that they bought lots on the strength of representations made by T. C. Shreve and his wife, Mrs. L. L. Shreve, that the lots were so restricted. Others, who were alleged to be parties to the agreement to restrict the sale of the lots, testified that after 1924 or 1925 all lots sold by them were restricted, and that purchasers were so advised. Deeds to lots executed after 1924 or 1925 by T. C. Shreve and Mrs. L. L. Shreve were introduced, and all of which, except the deed to Atkinson, incorporated the clause restricting the sale of the lot to a negro.

The petition alleged, and it was admitted, that the deed from Mrs. Shreve to Atkinson was executed on September 26, 1941. The evidence showed that at the time of the alleged contract in 1924 or 1925 to restrict the sale of the lots this particular lot was owned jointly by T. C. Shreve and his wife, Mrs. L. L. Shreve, and that Mr. Shreve died before the execution of the deed from Mrs. Shreve to Atkinson. The record does not disclose in what way, if any, Mrs. Shreve acquired the title to Mr. Shreve's interest in the lot, whether by deed, by will, inheritance, or in any other manner. The plaintiff sought to establish the agreement between those named above, to restrict the sale and use of the lots, by proving an oral contract between the parties; and as to this the court held: "The ruling is that this witness cannot go into an agreement he had with the other parties; an oral agreement concerning restrictions on the land." The plaintiff introduced evidence (detailed in the opinion infra) for the purpose of establishing the fact that at the time Atkinson purchased this property he did so with full knowledge that the property he purchased had been restricted against the sale to a negro.

During the trial the plaintiffs offered an amendment to the petition, as follows: "Plaintiffs pray that defendant Mrs. L. L. Shreve be permanently enjoined from selling any property owned by her, whether individually or as executrix of the estate of T. C. Shreve, deceased, or as sole heir of said T. C. Shreve, in the J. A. Coursey subdivision as shown by the plat recorded in plat book 8, page 93,

184

Fulton County Records, to any negro or any person of negro blood." Upon objection, this amendment was not allowed. On motion the court granted a nonsuit, and the plaintiffs excepted.

■ Whether or not the court erred in not admitting parol testimony to establish a contract to restrict the sale of lots to negroes, or whether there had been such part performance of this contract by the plaintiffs as would render it a fraud if the court did not compel performance, or whether the court erred in excluding certain evidence, need not here be determined. We are of the opinion, inasmuch as neither the deed to Atkinson nor the deed of any predecessor in the title contained any restriction as to its sale or use, that the evidence introduced to establish that he had notice of such restriction is insufficient in law so to do. "Restrictions on the use of real property will not be enlarged or extended by construction, and any doubt will be construed in favor of the grantee. . . When it is sought to restrict one in the use of his own private property for any lawful purpose, the ground for such interference must be clear and indubitable." *Randall* v. *Atlanta Advertising Service*, 159 *Ga.* 217 (125 S. E. 462). "The word 'indubitable' in its literal sense means without doubt. . . Under the circumstances we do not deem it inadvisable to say that the better practice would be to charge that such restrictions must be proved beyond a reasonable doubt." *Atlanta Association of Baptist Churches* v. *Cowan*, 183 *Ga.* 187 (188 S. E. 21). " 'As a general rule, the owner of land in fee has the right to use his property for apartments and stores, if he so desires; and any claim that there are restrictions must be clearly established' [citing], and in a prior decision . . where implied restrictions . . were sought to be shown, it was held that 'the burden was upon the plaintiffs to prove their case by more than a preponderance of the evidence,' that in such a case . . 'the better practice would be to charge that such restrictions must be proved beyond a reasonable doubt.' " *Jones* v. *Lanier Development Co.*, 190 *Ga.* 887, 889 (11 S. E. 2d, 11). Each of the foregoing cases and some others cited therein deal with implied restrictions on the use of land, which it was sought to establish. The opinion in *Atlanta Association of Baptist Churches* v. *Cowan*, supra, cited, as authority for this rule of evidence applying to implied restrictions cases wherein a party was seeking to establish a parol contract for the purchase of land. The instant

case is not based upon an implied restriction, but upon an express contract to restrict the use of the land. The degree of proof necessary to establish a parol contract for the purchase of land, and to establish an implied restriction for the use of land, having been determined as "beyond a reasonable doubt," it follows that the same degree of proof is essential to establish an express contract to restrict the sale and use of land. Accordingly, at the time the instant case was previously before this court, where an injunction was granted on interlocutory hearing (*Atkinson* v. *England,* 194 *Ga.* 854, 22 S. E. 2d, 798), it was held that "to impose or enforce restrictions on the use or alienation of property, . . must be proved beyond a reasonable doubt."

The proof to establish notice to Atkinson of restrictions as to alienation or use of this property was as follows: J. F. Cloud Sr. testified: "I recall when the negro Atkinson . . first began to do work on his lot. I do not know the exact date, but it was the latter part of August or the first of September, 1941. I talked to Atkinson at that time. . . I happened to see some lumber on this lot, a small pile of lumber, and about three people down there at work. . . I . . asked him what he was doing. He said he was fixing to build a house, and I says, 'The heck you are,' and he says, 'Yes,' and I turned around and walked off, and he says, 'Well, what is wrong about it?' And I said there was plenty. . . He met Mr. Sargent and I the Sunday following that week, . . the second Sunday, over at Mr. Sargent's house. . . We told him that he was starting that house over there, and that the citizens of that community considered that as restricted property, and that we didn't want him to build a house on it. I told him against what it was restricted; that it was restricted against the sale to colored people. This second conversation was just about seven or eight days from the first time I spoke to him. It was the latter part of September, or August, or the first of September. I don't remember the exact date. . . He hadn't practically done anything on the lot by the time of the second conversation." H. T. Sargent testified: "I have had occasion to talk to the defendant, John L. Atkinson, about restrictions on the property involved in this case. That was some time near the early part of September. . . I couldn't say just the date, but it was the latter part of August or September, or the first of September, 1941. At the time I talked

to him he had just started to work. . . I drove over to see these parties that were building the house, and Atkinson was there. . . They had just built a little tool-house and seemed to be cleaning off and preparing to build a little dam or something in the branch. . . They were going to make cement blocks out of this creek sand. . . I said, 'Atkinson, . . as a citizen I come over here to you in the daytime, but I want it to be very definitely understood with you and me that I am making no threats to you, and ain't asking you to stop this construction, but I do want to tell you that I am afraid you are going to spend money here that won't realize you much, and then I think you will be very unhappy living here, building here, because it is held out in the mind of the public generally that this is restricted property on this side of the street. Those people, I made this remark, will co-operate with you most anyway, but not on this side of the street, because of the public sentiment that is there.' As to whether I told him that the property was restricted against negroes, I told him that it was my understanding and it was the understanding of the public generally that all of this property was restricted, because it had been represented to myself as well as many others that this property was all restricted. However, I had not gone into the deeds to see if it was restricted."

Such evidence is not sufficient to authorize the jury to find that Atkinson received notice that the lot he purchased was restricted against the purchase or use of the lot by a negro. It does not specifically identify the lot as being covered by any restriction referred to, nor is the evidence above pertaining to restrictions definite and certain as to the fact of a restriction; but was in the language of the witnesses a "public understanding," or that "the citizens of that community considered that as restricted property." Neither of which, in its last analysis amounts to more than a rumor, which can never be the basis of notice. *Black* v. *Thornton,* 31 *Ga.* 641 (3). Neither of the witnesses definitely stated that there were any restrictions, nor did either state any fact whatever that was sufficient to put him upon inquiry, where by the exercise of ordinary duty and diligence he would have discovered any restrictions. *Ratteree* v. *Conley,* 74 *Ga.* 153; *Williams* v. *Smith,* 128 *Ga.* 306, 310, 57 S. E. 801. More especially is this language too indefinite to constitute notice, in view of the fact that at the time these state-

ments were made two negroes had purchased lots, erected houses, and resided thereon, and one was then residing on a lot adjoining the lot in question.

While we have reached the foregoing conclusion in reference to the evidence being insufficient to constitute notice, we are not unmindful that when the case was previously here (194 *Ga.* 854, supra) this court held that Atkinson had received due and sufficient notice of the restrictions. By reference to the record in that case we find that by affidavit the evidence of these same two witnesses was as follows: J. F. Cloud Sr. said: "On or about the first of September, 1941, he discovered that the defendant John L. Atkinson was preparing to construct a house upon [the described lot]. . . That he and Mr. H. T. Sargent visited said John L. Atkinson and informed him that the property . . was restricted to white residential property, and that if he intended to build a house and occupy the same that it would be in violation of the restrictions on said property which restricts the same to white persons. . . This notice was given to the defendant Atkinson before any construction had been begun upon said property." H. T. Sargent said: "On or about the first of September, 1941, he and Mr. J. F. Cloud Sr. visited the defendant John L. Atkinson, and informed him that the property [describing lot] on which [he] was preparing to construct a house and to occupy was restricted to white people, and that if he intended to occupy said property that it would be in violation of said restrictions." Such notice produced on the previous hearing was definite as to the fact of restrictions, and was specifically applied to the lot in question. But the ruling on the sufficiency of evidence when the case was previously before this court does not enure to the benefit of the plaintiffs on a subsequent hearing where the evidence is not the same. Each is a separate and independent investigation.

■ During or at the conclusion of the trial the plaintiffs submitted an amendment to the petition, praying that Mrs. L. L. Shreve be permanently enjoined from selling to a negro any property in the subdivision owned by her individually as the sole heir of T. C. Shreve, or as the executrix of the estate of T. C. Shreve. This amendment was properly disallowed. There was no evidence that Mrs. Shreve individually owned any other lot in the subdivision, and no evidence that she was the sole heir of T. C. Shreve and

owned any lot as such. The amendment, by seeking an injunction against Mrs. Shreve as the executrix of the estate of T. C. Shreve, who had not been made a party, sought an injunction against a person who was not a party to the suit. *Smith* v. *Ardis*, 49 *Ga.* 602; *Roberts* v. *Atlanta Real Estate Co.*, 118 *Ga.* 502 (45 S. E. 308); *Smith* v. *Garrison*, 155 *Ga.* 260 (116 S. E. 599).

*Judgment affirmed. All the Justices concur.*