43231. KNOTTS LANDING CORPORATION v. LATHEM et al.
(348 SE2d 651)

SMITH, Justice.

The appellees, residents of the Kingston Square subdivision in Cherokee County, sought to enjoin Knotts Landing and Allen Gould from commercially developing a tract of land adjacent to Kingston Square. Knotts Landing appeals the Cherokee County Superior Court's denial of its motion for summary judgment on both counts of the appellees' complaint. We affirm in part and reverse in part.

Rogers, President of Knotts Landing, and Tony Tritt, a former principal of Knotts Landing, entered into a contract to purchase 101.29 acres of land in Cherokee County in February 1983. They closed the purchase in May 1983. They purchased an option on 96.5 acres of adjoining land in May 1983. They exercised the option in April 1984. No restrictions upon the use of the assembled tract appeared in any document relating to either transaction.

The Southeastern Surveying and Mapping Company prepared a plat of the land purchased by Knotts Landing, dated April 19, 1983. The plat showed a subdivision called Kingston Square which consisted of four-hundred twenty lots covering most of the property. A small portion containing tracts A-H was specifically excluded from the subdivision.

The president of Southeastern Surveying filed two affidavits as evidence regarding Knotts Landing's motion. In one he stated that Knotts Landing requested and paid for the plat. In the other, he stated that he had prepared the plat for another party, but he changed the name of the subdivision when he heard of Knotts Landing's purchase. In his second affidavit he stated that Knotts Landing did not pay anything for the plat.

In mid-November 1983, Knotts Landing recorded a plat in the Cherokee County Clerk's office which set out "Unit I" of the Kingston Square subdivision on a portion of the tract assembled by Rogers and

Tritt. A covenant subsequently filed in the clerk's office restricted development in the subdivision to single-family residential homes. In May 1984, Knotts Landing recorded another plat designating a second portion of the tract adjacent to Unit I as "Unit II" of Kingston Square, and incorporating the restrictions found in the aforementioned covenant into the second plat. Knotts Landing left the remaining portion of the tract vacant and subsequently had the vacant portion zoned commercial.

Knotts Landing employed the Bucky Nelson Realty Company to market lots and houses in Kingston Square. In marketing the homes and lots, agents for Nelson Realty showed prospective buyers a plat of Unit I including lots numbered 1-133, a plat of Unit II including lots numbered 201-229, 239-255, and 420, and a list of the restrictions placed upon development in Unit I and Unit II. No written material shown to prospective buyers listed any restrictions in the undeveloped portion of the tract.

Purchasers of lots and homes bordering the undeveloped portion of the tract filed affidavits, however, asserting that representatives of Nelson Realty and Knotts Landing assured them that the restrictions applying to Unit I and Unit II would apply to the residential development that they promised to complete in the vacant portion of the tract. A number of residents of Kingston Square claimed by affidavit that either Rogers, Tritt, or agents of Nelson Realty assured them of plans to complete two additional phases of Kingston Square which would eventually result in a 420-lot subdivision occupying all of the tract purchased by Rogers and Tritt in 1983 and 1984.

1. Construing the evidence in favor of the party opposing the motion for summary judgment, the homeowners, we find that Knotts Landing, through its officers and the agency of Nelson Realty, promised orally to restrict the vacant tract neighboring Kingston Square to single-family residential development of the same nature as Kingston Square. Knotts Landing did not, however, make any such promise in writing.

In addition, for the purposes of the motion for summary judgment, we find that Knotts Landing requested and paid for a survey plat, which contained no restrictions and was never filed, of a subdivision called Kingston Square consisting of four-hundred twenty lots covering almost all of the land assembled by Rogers and Tritt in 1983 and 1984.

2. In Count I of their complaint, the appellees requested the recognition of implied covenants covering the vacant portion of the tract assembled by Rogers and Tritt.

An owner of a tract of land may agree with purchasers of portions of the tract to restrict the entire tract to residential or other uses in order to increase the marketability of the land. Parties most often

assure enforcement of such an agreement by reducing the specific restrictions on the land to writing, specifying the property restricted, and then recording the restrictions and the property description with the proper authorities. Such an express, restrictive covenant was recorded covering Unit I and Unit II.

Parties may also take actions from which courts will imply an agreement to restrict the uses allowed upon a tract of land. The party wishing to enforce a non-express agreement must, of course, establish the area covered by the agreement and the specific content of the restrictions alleged. This is usually accomplished by showing a common grantor's general scheme or plan for developing the property in question. See *Westhampton, Inc. v. Kehoe*, 227 Ga. 642 (182 SE2d 430) (1971).

(a) Here, the appellees have provided evidence of specific oral assurances by the developer to them that property neighboring Unit I and Unit II would be restricted as Units I and II were restricted, and they have produced a plat, arguably prepared at the request of Knotts Landing, that shows a subdivision covering all of the tract originally purchased by Knotts Landing. The evidence of oral assurances of restrictions certainly raises an issue of fact as to the content of the restrictions claimed by the appellees. See *Westhampton*, supra at 645. We find, however, that the appellees' evidence did not create an issue of fact as to the area to be covered by the restrictions.

(b) We have previously required the party asserting that land is restricted to produce a writing identifying the land to be restricted. See, e.g., *Westhampton*, supra at 643; *Phillips v. Ingram*, 163 Ga. 580, 581, 588 (136 SE 785) (1927); *Hancock v. Gumm*, 151 Ga. 667, 678-79 (107 SE 872) (1921). Here the appellees have produced a plat, allegedly prepared at the request of Knotts Landing, that shows a residential subdivision that covered the entire original tract purchased by Knotts Landing. This plat, however, does not comprise a proper writing.

(c) A writing made or used by one of the parties or an action taken by one of the parties should relate, as evidence, to the interaction between the parties in order to show the agreement made between the parties. The plat introduced by the appellees in this case was never shown to any purchaser of a lot in Kingston Square, and it was never used in promoting the subdivision or in selling lots in the subdivision. We view it, thus, as a manifestation of a possibility considered, rather than a common plan developed by the common grantor, Knotts Landing.

(d) The appellees have produced evidence of restrictions they assert were promised for all of the tract purchased by Knotts Landing. They have not, however, produced a writing identifying the extent of any property, beyond Units I and II, that the restrictions bind. Under

this evidence, there is no issue of fact as to the lack of proper identification of the land assertedly bound by an implied covenant, and the appellant, thus, should have been granted summary judgment as to Count I of the appellees' complaint.

3. In Count II of their complaint, the appellees sought to have the appellants and Allen Gould estopped from commercially developing the vacant portion of the property assembled by Rogers and Tritt.

The appellees produced evidence that agents and principals of Knotts Landing promised that the vacant property would be at least as restricted as the appellees' lots, and that these promises induced the appellees to purchase lots and homes in Kingston Square subdivision. "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44 (a). Under this statute, the appellees have produced sufficient evidence to create an issue of fact as to whether the appellant should be bound by promissory estoppel. *Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322 (283 SE2d 262) (1981); *20/20 Vision Center v. Hudgens*, 256 Ga. 123, 128 (344 SE2d 216) (1986). The trial court correctly denied the appellant's motion for summary judgment as to Count II of the appellees' complaint.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Weltner, J., who dissents as to Division 3.*

DECIDED OCTOBER 9, 1986 —
RECONSIDERATIONS DENIED OCTOBER 22, 1986.

*Hurt, Richardson, Garner, Todd & Cadenhead, E. Lewis Hansen, Judith Inge Harris,* for appellant.
*Anthony Kirkland, Phillip C. Smith,* for appellees.