## A99A0088. ROTH et al. v. CONNOR et al.
(510 SE2d 550)

ELDRIDGE, Judge.

On May 30, 1995, Connor Construction & Manufacturing Company, Inc., defendant-appellee, conveyed by warranty deed, executed by John Connor as president, to James B. and Andrea M. Roth, plaintiffs-appellants, Lot 2 of the Rainbow Mountain Subdivision, which had a new octagonal 1,600-square-foot living space cabin on it. Attached to the warranty deed were certain easements and restrictive covenants. Nowhere in either the warranty deed or the easements and restrictive covenants was it stated that the restrictive covenants were filed of record in the deed records of the Clerk of the Superior Court for Gilmer County or in the Gilmer County Planning Office. In fact, there was no such filing. Further, the sales contracts made no reference to any restrictive covenants.

However, plaintiffs contended that, in the sales promotion, John Connor had represented to them that restrictive covenants required a minimum 1,600 square feet of living space applied to all houses in the Rainbow Mountain Subdivision and did not disclose that such restrictive covenants applied only to Phase I and not to Phase II of the subdivision. Subsequently, plaintiffs discovered houses near their lot which appeared to be less than 1,600 square feet of living space.

On July 8, 1996, plaintiffs sued the defendants in four counts. The defendants timely answered separately. On November 21, 1997, defendants moved for summary judgment. On November 21, 1997, the defendants filed in support of such motion the affidavit of John Connor; a portion of what appeared to be a deposition; and copies of the contracts, warranty deed, and covenants. Plaintiffs in opposition to the motion filed a number of affidavits. The Gilmer County Land Development Ordinance as amended was tendered, but it was neither a certified copy nor accompanied by an appropriate affidavit authenticating it as an ordinance duly enacted by the Commissioners of Gilmer County in order to satisfy OCGA § 9-11-56 (e).

On March 16, 1998, the trial court entered summary judgment for the defendants against the plaintiffs. Plaintiffs timely filed their notice of appeal.

1. Plaintiffs' first enumeration of error is that the "trial court committed harmful reversible error in deciding whether the restrictive covenants applied to all of Rainbow Mountain Subdivision or

just to Phase I of Rainbow Mountain." We do not agree.

(a) This case differs from most restrictive covenant cases in that the grantor created restrictive covenants by deed only as to the square footage of living area in construction of residential dwellings in some lots sold, but not as to a reserved separate tract in the Rainbow Mountain Subdivision that he later conveyed as lots with a different restrictive covenant as to the square footage of living space construction. Here, the plaintiff-grantees in Phase I of the subdivision sued to enforce and impose the same building restriction applicable to their lot to lots sold by the grantor of retained land under Phase II, which had a different construction limitation. In this case, there was no recorded subdivision plat for the entire tracts of Phases I and II of Rainbow Mountain with the restrictive covenant requiring 1,600 square feet of living space, nor were the restrictive covenants separately recorded as to the entire subdivision or incorporated by reference into a recorded deed to the entire subdivision. In fact, no subdivision plat containing restrictive covenants applicable to the entire Phase I was made part of the record. See *Southeast Toyota Distrib. v. Fellton*, 212 Ga. App. 23, 25-26 (1), (2) (440 SE2d 708) (1994). The restrictive covenants were attached to individual warranty deeds so that only those lots were subject to the restrictive covenants.

Limitations and restrictions on the use of one's own land will not be enlarged or extended by judicial construction of the covenant and will be construed in favor of the owner of the land sought to be restricted. The grounds for such interference by the superior court must be based upon evidence which is clear and beyond reasonable doubt of the existence, application, and intent of express restrictive covenants. *England v. Atkinson*, 196 Ga. 181, 184-185 (1) (26 SE2d 431) (1943); *King v. Baker*, 214 Ga. App. 229, 235 (5) (447 SE2d 129) (1994). Restriction on the use of land must be clearly established, not only as to the restrictions, but also as to the land restricted, and restrictions will be strictly construed. *Williams v. Waldrop*, 216 Ga. 623, 624 (1) (118 SE2d 465) (1961); *Spencer v. Poole*, 207 Ga. 155 (60 SE2d 371) (1950).

"This manifest intent being the cardinal rule of construction will control over the above mentioned rule of strict construction against restrictions. If the intent is plainly manifest no ambiguity exists, and it is only in cases of ambiguity that the rule of strict construction applies." *Voyles v. Knight*, 220 Ga. 305, 306 (2) (138 SE2d 565) (1964). "Where a restrictive covenant in a deed is involved, the legal presumption is in favor of the free use of the property by its owner, and any doubt will be construed in favor of the [owner]. [Cit.]" *Burch v. Ragan*, 92 Ga. App. 605, 609 (2) (89 SE2d 541) (1955); see also *England v. Atkinson,* supra. Where the land, use, and scope of the restrictions are unclear, such ambiguity requires strict construction.

"An owner of a tract of land may agree with purchasers of portions of the tract to restrict the entire tract to residential [construction of 1,600 square feet of living space] in order to increase the marketability of the land. Parties most often assure enforcement of such an agreement by reducing the specific restrictions on the land to writing, specifying the property restricted, and then recording the restrictions and the property description with the proper authorities." *Knotts Landing Corp. v. Lathem,* 256 Ga. 321, 322-323 (2) (348 SE2d 651) (1986). However, this was not done in this case. Each grantee in Phase I received a warranty deed that attached and incorporated easements and restrictive covenants that bound only such lot for the benefit of the grantor and others who took from the common grantor. In short, defendants, as grantors, could impose restrictive covenants that apply to Phase I, but by reservation, would not apply to Phase II, and the grantor may still enforce the covenants as to Phase I only.

"While the general rule is that the owner of land in fee has a right to use it for any lawful purposes, and any claim that there are restrictions upon such use must be clearly established, the owner of the fee has the right to sell his land subject to such reservations or restrictions as he may see fit to impose, provided they are not contrary to public policy, and such reservations or restrictions create an easement, or servitude in the nature of an easement, upon the land conveyed for the benefit of the adjoining property of which the grantor remains the owner, and a grantee and a remote grantee from the former owner who imposes the restriction are entitled to the same remedy for its enforcement as was their grantor. The fact that other or different restrictions were incorporated in the plaintiffs' deeds, or that their lot[ ] might not be subject to the same restrictions as the defendants' [Phase II] lot, would not deprive [defendants] of the right to enforce the restriction placed upon the [plaintiffs'] lot by the [defendants as] common grantor of both the plaintiffs and the defendant[s' grantees of Phase II]." (Citations omitted.) *Grove Lakes Subdivision v. Hollingsworth,* 218 Ga. 443, 444-445 (128 SE2d 499) (1962). See also *Cawthon v. Anderson,* 211 Ga. 77, 78 (1) (84 SE2d 66) (1954); *Spencer v. Poole,* supra at 156 (1). Thus, no express restrictive covenant for Phase I as to construction existed that imposed a square footage limitation of 1,600 square feet of liveable area as to Phase II of Rainbow Mountain Subdivision.

(b) While no express restrictive covenant as to Rainbow Mountain Subdivision was created by recording either a plat with restrictive covenants or unrecorded restrictive covenants as to the entire subdivision, each lot in Phase I had restrictive covenants attached to the warranty deeds, so that Phase I was subject to the same restrictive covenants. Such subdivision developmental scheme may have

created an implied restrictive covenant for Phase II as well. Limitations or restrictions by implication on use of land are not favored and must be strictly construed against restrictions. See *Sissel v. Smith*, 242 Ga. 595, 596 (2) (250 SE2d 463) (1978); see also *Randall v. Atlanta Advertising Svc.*, 159 Ga. 217 (125 SE 462) (1924).

"Where the owner of land adopts a general scheme of dividing his land into lots for the purpose of selling them under express restrictions without reservations or limitations as to the use of the lots, and the restrictive covenants are for the benefit of the land retained, such a covenant as well as the lots sold mutually applies to all parties inter sese. However, where the owner subdivides his land into lots, and the restrictions imposed by him on the use of the lots are limited only to those lots where the deeds to purchasers specifically incorporate the restrictions, and are not expressly made applicable to all lands in the subdivision, to be sold or retained, such restrictions would apply to the unsold lots of the owner only by implication. In such a situation the restrictive clause must be construed in the light of the other facts of the record and intention of the parties. Limitations or restrictions as to the use of property by the owner are not favored and must be strictly construed. [Cits.]" *Williams v. Waldrop*, supra at 624 (1).

"When a grantee accepts a deed he will be bound by the covenants contained therein, although the deed has not been signed by him. In such a case, the general scheme binds all the purchasers inter sese, not only as to the restrictions embodied in their respective deeds, but also as to such inhibitions as were embraced within the general scheme of the subdivision, of which they had or were chargeable with notice." (Citations and punctuation omitted.) *Antill v. Sigman*, 240 Ga. 511, 512 (1) (241 SE2d 254) (1978).

"Parties may also take actions from which courts will imply an agreement to restrict the uses allowed upon a tract of land. The party wishing to enforce a non-express agreement must, of course, establish the area covered by the agreement and the specific content of the restrictions alleged. This is usually accomplished by showing a common grantor's general scheme or plan for developing the property in question. See *Westhampton, Inc. v. Kehoe*, 227 Ga. 642 (182 SE2d 430) (1971)." *Knotts Landing Corp. v. Lathem*, supra at 323.

"A general building scheme and development plan in a subdivision for the purpose of selling lots under the restrictions is binding and enforceable, though not embraced in the deeds. Restrictions under a general plan adopted by an owner to sell lots may, in equity, be imposed on lands beyond the express restrictions contained in deeds on the theory of implied covenants. Where a general scheme of development exists, the grantees of lots subject thereto may enforce the restrictions against each other, although such restrictions are not

embraced in the defendant's conveyance, where the owner sought to be subjected to the restrictions purchased with notice thereof. [Cits.]" *Westhampton, Inc. v. Kehoe*, supra at 645-646; see also *Knotts Landing Corp. v. Lathem*, supra; *McLean v. Turtle Cove Property Assn.*, 222 Ga. App. 709 (475 SE2d 718) (1996).

However, in such cases, there existed recorded subdivision plats and restrictive covenants that indicated therein that future phases would also come within the restrictions, so that reasonable notice was afforded as a matter of public record to any prospective purchaser that they also would be bound by the same restrictions. Such implied covenants did not apply to the original grantor regarding land reserved from the covenants and not intended by him to be subject to the restrictions.

Limitations on use of land by implication are not favored and must be strictly construed against the person seeking the restriction. *Taylor v. Smith*, 221 Ga. 55 (142 SE2d 918) (1965); *David v. Bowen*, 191 Ga. 467 (12 SE2d 873) (1941); *Thompson v. Glenwood Community Club*, 191 Ga. 196 (12 SE2d 623) (1940). The standard of proof of a restrictive covenant by implication is only "evidence that is clear and beyond a reasonable doubt." *McKee v. Hubert*, 211 Ga. 329 (85 SE2d 757) (1955); see also *Wiggins v. Young*, 206 Ga. 440 (57 SE2d 486) (1950). Such implied covenants arise from proof of an actual pre-existing plat and recorded subdivision restrictions, because the act of making and formulating a set of restrictions is deemed to be intended by the developer to apply to all lots alike. *Kilby v. Sawtell*, 203 Ga. 256 (46 SE2d 117) (1948). Therefore, anything that is evidence of a contrary intent of the subdivider not to have the subdivision restrictions apply to other phases of the subdivision will defeat the enforcement of restrictions by implication, because the implication cannot be proved clearly and beyond a reasonable doubt. *Reid v. Standard Oil Co. of Ky.*, 107 Ga. App. 497 (130 SE2d 777) (1963).

Therefore, the intentional failure to file the subdivision plat and restrictive covenants of record as to Phase I or to apply them to the entire Rainbow Mountain Subdivision, the use of restrictive covenants only in each individual deed, and the development in two phases with different restrictions by the defendant-grantor prevent plaintiffs from legally being able to prove that the restrictive covenants of Phase I apply to Phase II by clear evidence and by a standard of proof beyond a reasonable doubt.

"The owner thereby reserved the right to sell lots and make deeds not specifically incorporating the covenant thereto. Since it clearly appears that it was the intent of the defendant that the restrictions would apply only where there was a sale of a lot and the restrictions were specifically incorporated in the deed to the purchaser, he impliedly retained the right to use the unsold lots for pur-

poses other than [under the construction restriction]." *Williams v. Waldrop*, supra at 625. Thus, the trial court did not err in granting summary judgment.

2. Plaintiffs' enumerations of error 2 through 5 and 8 are controlled adversely to the plaintiffs by Division 1, finding that summary judgment was properly granted as to the restrictive covenant as to the minimum size of residential construction.

3. Plaintiffs' sixth enumeration of error is that the "trial court committed harmful reversible error in granting summary judgment against the appellants on their allegations of fraud and deceit and ignoring the fact that fraud produces damages." We do not agree.

Restrictive covenants and subdivision plats may be independently recorded and filed of record, either with the clerk of the superior court as part of the deed records, or the county planning office; such recorded restrictions provide constructive knowledge thereof. See *Hendley v. Overstreet*, 253 Ga. 136, 137 (318 SE2d 54) (1984); see also *Kole v. Linkenhoker*, 259 Ga. 82, 84 (377 SE2d 671) (1989). The presence of the recordation of such restrictive covenants would provide constructive notice of the existence of such covenants. See *King v. Baker*, supra at 232 (3); *Southeast Toyota Distrib. v. Fellton*, supra at 26. "It is presumed that a purchaser has examined every deed and instrument affecting the title. He is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." (Citations and punctuation omitted.) *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732) (1991); see also *Southeast Toyota Distrib. v. Fellton*, supra at 26. "A purchaser of land is conclusively charged with notice of restrictive covenants contained in a deed which constitutes one of his muniments of his own title[.] [Cit.]" *King v. Baker*, supra at 232 (3).

Plaintiffs' deed makes no reference to either a recorded or unrecorded subdivision plat for Rainbow Mountain or either Phase I or II. The restrictive covenant attached to the deed applied only to the lot conveyed and made no reference to application to other lots. However, the restrictive covenants were captioned "RESTRICTIVE COVENANTS FOR RAINBOW MOUNTAIN," which could imply broader application. However, an examination of the recorded deeds, plats, and restrictive covenants in the deed records or the subdivision plans filed with the planning office as part of any title search would reveal the absence of such restrictive covenants applying to the entire Rainbow Mountain Subdivision or even of record as to Phase I. Plaintiffs failed to exercise due diligence to determine if the restrictive covenants were of record prior to purchase, so that any action for fraud fails. *Longino v. Bank of Ellijay*, 228 Ga. App. 37, 39 (1) (491 SE2d 81) (1997); *First Union Nat. Bank v. Gurley*, 208 Ga. App. 647, 649

(431 SE2d 379) (1993); *Zeeman v. Black*, 156 Ga. App. 82, 87-88 (273 SE2d 910) (1980).

4. The plaintiffs' seventh enumeration of error is that the "trial court committed reversible error by granting summary judgment against the plaintiffs' Racketeer Influenced and Corrupt Organizations claim." We do not agree.

In neither the complaint nor the evidence in opposition to the motion for summary judgment did the plaintiffs produce evidence raising the issue that defendants "have committed two or more predicate criminal acts which have resulted in injury to the plaintiffs," as required by the RICO statute. OCGA §§ 16-14-3 (9) (A); 16-14-4; *Dee v. Sweet*, 268 Ga. 346, 349 (1) (489 SE2d 823) (1997); see also *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 804 (1) (500 SE2d 591) (1998); *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593, 598-602 (1) (494 SE2d 388) (1997); *Longino v. Bank of Ellijay*, supra at 40-41 (2). The two predicate acts relied upon must be indictable under state or federal law and come within one of the categories allowing a RICO action. See OCGA § 16-14-3 (9) (A) (i) through (xxxii), (B); *Mullen v. Nezhat*, 223 Ga. App. 278 (477 SE2d 417) (1996); *Sevcech v. Ingles Mkts.*, 222 Ga. App. 221 (474 SE2d 4) (1996); *Raines v. State*, 219 Ga. App. 893 (467 SE2d 217) (1996); *Avery v. Chrysler Motor Corp.*, 214 Ga. App. 602 (1) (448 SE2d 737) (1994); *Waldschmidt v. Crosa*, 177 Ga. App. 707, 710 (340 SE2d 664) (1986). Plaintiffs neither identified two criminal acts nor submitted evidence in opposition to the motion for summary judgment that would raise a material issue of fact regarding whether such acts occurred. Therefore, the grant of summary judgment was proper. See OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED DECEMBER 10, 1998 —
RECONSIDERATION DENIED JANUARY 4, 1999 

*Ray & McKinney, Robert M. Ray, Jr., Michael K. McKinney*, for appellants.
*Clifford S. Lancey*, for appellees.