**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 29, 2024**

# In the Court of Appeals of Georgia

A23A1265. TUCKER et al v. BRANNEN LAKE EAST, LLC.

DILLARD, Presiding Judge.

Brannen Lake East, LLC—the owner of Brannen Lake and much, but not all, of the property surrounding the lake—filed a declaratory judgment action against John Tucker and Burney Marsh—owners of property next to the lake—to determine whether it had the right to restrict their use of the lake. Following an evidentiary hearing, the trial court ruled in favor of BLE. Tucker and Marsh appeal, contending the trial court erred in doing so because the deed to their property established an easement for use of the lake by express grant. For the following reasons, we agree and reverse.

A trial court's findings of fact after a declaratory-judgment hearing are "analogous to a jury verdict and will not be interfered with if there is any evidence to support them";[1] but we review the trial court's conclusions of law *de novo*.[2] So viewed, the record shows that on May 7, 2015, Tucker and Marsh purchased property on Brannen Lake in Statesboro—located at 1000 Brannen Lake Road—from Irvin Brannen, III; Roy Pilgrim Otwell, III; Caroline Otwell Harless; Matthew Williamson; Jonathan Williamson; and Irvin Brannen, Jr., Family Limited Partnership. The warranty deed conveying the property described the tract as follows:

> All that certain tract or parcel of land lying and being in the 45th G.M. District of Bulloch County, Georgia[,] being Lot 6 according to a plat of Brannen Lake prepared by Lamar O Reddick and Associates, Registered Surveyors, dated June 24, 1993[,] and recorded in Plat Book 41, Page 80, Bulloch County records. The aforesaid plat and description thereon are hereby incorporated by reference and made a part hereof.

---

[1] *Strange v. Towns*, 330 Ga. App. 876, 876 (769 SE2d 604) (2015) (punctuation omitted); *accord Bank of the Ozarks v. DKK Dev. Co.*, 315 Ga. App. 539, 540 (726 SE2d 608) (2012).

[2] *See Strange*, 330 Ga. App. at 876 (punctuation omitted); *accord Bank of the Ozarks*, 315 Ga. App. at 540.

The June 24, 1993 plat referenced in Tucker and Marsh's warranty deed is a subdivision plat for Lots 1, 3-13, 15, and 16 of Brannen Lake, and the plat depicts the lake as being contiguous with those other lots in the subdivision, including Lot 6—the lot which Tucker and Marsh own. Notably, the Brannen Lake subdivision plat and a survey of Lot 6—both of which were recorded in the Bulloch County records—did not place any restrictions on access or use of Brannen Lake. In addition, the property included a house and a five-tier dock on the lake. And over the course of the next six years, Tucker and Marsh boated on and otherwise used the lake on nearly a daily basis.

On January 31, 2022, BLE purchased Brannen Lake, as well as a significant amount of property on the east side of the lake, from Caroline Otwell Harless and Roy Otwell, III—two of the former owners of Tucker and Marsh's property. In late March of that same year, Cecil Kennedy—BLE's principal and managing member—was boating on the lake with his family when he became involved in a heated argument with Tucker, who was also boating, regarding whether the motor on Kennedy's boat exceeded the horsepower of those normally permitted for use. One week after this confrontation (on March 30, 2022), BLE's counsel sent Tucker and Marsh a letter, noting that their 2015 deed did not convey any rights to the lake; that a 1987 deed in

3

their chain of title incorporated covenants restricting use of the lake and provided the lake's owners with the power to control access; and therefore, as current owners of Brannen Lake, BLE was terminating their access effective immediately.

Despite this letter, Tucker and Marsh continued using the lake. And as a result, on June 24, 2022, BLE filed a declaratory-judgment action against them, seeking a determination of whether it had the right to restrict their use of the lake. Tucker and Marsh filed a response, and on September 7, 2022, the trial court began an evidentiary hearing on the matter, but continued it after BLE's two witnesses testified so the parties could attempt mediation. Several months later, after mediation was unsuccessful, the court resumed the hearing, during which Tucker and Marsh's witnesses testified, and they claimed to have an express easement to use the lake as a result of the subdivision plat referenced in their warranty deed. At the conclusion of the hearing, the trial court took the matter under advisement. But one month later, it issued an order ruling that Tucker and Marsh's deed only provided an implied license subject to revocation, rather than an easement, and so BLE's letter to them after the confrontation terminated that license. This appeal follows.

In their sole enumeration of error, Tucker and Marsh contend the trial court erred in ruling that BLE could restrict their access to Brannen Lake, arguing the deed to their property incorporating the subdivision plat established an easement for use of the lake by express grant. We agree.

Generally speaking, an easement is "an interest in land owned and possessed by another."[3] And Georgia law has long recognized that when a developer "conveys lots with reference to a subdivision plat, the grantees may receive easements in certain features—mostly streets and parks—that are designated on the plat."[4] Indeed, for a small category of features, "designating them appropriately on the subdivision plat is enough, absent contrary evidence based in the plat or deed, to demonstrate clear

---

[3] *WS CE Resort Owner, LLC v. Holland*, 315 Ga. 691, 694 (2) (a) (884 SE2d 282) (2023); *see Rahn v. Pittman*, 216 Ga. 523, 524 (1) (118 SE2d 85) (1961) (holding that a property right was created when grantee's deed referred to subdivision plat showing right of way); *Hollomon v. Bd. of Ed. of Stewart Cnty.*, 168 Ga. 359, 364 (147 SE 882) (1929) (explaining that "[a]n easement is a right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with the general property in the owner" (citation and punctuation omitted)).

[4] *Holland*, 315 Ga. at 695 (2) (a); *see Stanfield v. Brewton*, 228 Ga. 92, 94-95 (1) (a)-(b) (184 SE2d 352) (1971) (explaining that when "the owners of a tract of land subdivide it into lots, record a map or plat showing such lots, with designated streets and a public park, and sell lots with reference to such map or plat," the purchasers "have an easement in these public areas").

intent to grant an easement in the features to lot owners who bought with reference to the plat."[5] Importantly, the decisions of the Supreme Court of Georgia have included in this category "(1) streets designated and laid out on the subdivision plat; (2) parks; and (3) lakes, which we have equated to parks."[6] These features share two things in common with the first being that there is "simply a well-settled understanding, reflected in more than a century of our decisions, that when these basic features are designated on a subdivision plat, there is ordinarily no reason to doubt that they are included as part of the unified plan for the subdivision and meant for the lot owners' use."[7] Second, and equally important, these are "the sort of features for

---

[5] *Holland*, 315 Ga. at 697 (2) (b) (i).

[6] *Id.* at 698 (2) (b) (i) (citations omitted); *see, e.g.*, *Goodson v. Ford*, 290 Ga. 662, 665 (3) (725 SE2d 229) (2012) (holding when a property owner subdivides land, records a subdivision plat designating streets, and sells lots in the subdivision with reference to the plat, she is "presumed to have irrevocably dedicated such streets for the use of all of the lot owners in the subdivision" (punctuation omitted)); *Higgins v. Odom*, 246 Ga. 309, 310 (271 SE2d 211) (1980) ("When a developer sells lots according to a subdivision plat, which has a lake area designated on it, the purchasers acquire an irrevocable easement in that park, with which the developer may not interfere."); *Walker v. Duncan*, 236 Ga. 331, 331 (223 SE2d 675) (1976) (same).

[7] *Holland*, 315 Ga. at 698 (2) (b) (i); *see Hendley v. Overstreet*, 253 Ga. 136, 136 (318 SE2d 54) (1984) ("It is well settled that when a subdivision contains an attraction such as a park or lake which renders the lot more desirable, the sale of lots in reference to a plat showing the attraction will create an irrevocable easement in such an area for

which designation or delineation on the plat alone can give reasonable certainty about the scope of the easement granted."[8] Simply put, settled expectations "rooted in more than a century of practice and the relative ease with which the scope of an easement in these features can be discerned support a strong presumption that designating these features on a subdivision plat conveys an intent to grant an easement to lot owners who buy with reference to the plat."[9]

Here, the 2015 warranty deed obtained by Tucker and Marsh when they purchased their property—including the dock on the lake—explicitly incorporated by reference the 1993 Brannen Lakes subdivision plat, which shows the lake as part of the subdivision and contiguous to Lot 6 (their property). Furthermore, neither Tucker and Marsh's 2015 warranty deed, nor the subdivision plat, nor the survey of Lot 6—all of which were duly recorded in the Bulloch County property records—placed any

---

the lot owners.").

[8] *Holland*, 315 Ga. at 698 (2) (b) (i); *see also Macon-Bibb Cnty. Indus. Auth. v. Central of Ga. R. Co.*, 266 Ga. 281, 283 (3) (466 SE2d 855) (1996) ("An express grant of an easement must contain language sufficient to designate with reasonable certainty the land over which it extends").

[9] *Holland*, 315 Ga. at 699 (2) (b) (i).

restrictions on access or use of Brannen Lake. Given these circumstances, Tucker and Marsh possess an irrevocable easement acquired by express grant to access the lake.[10]

Nevertheless, BLE counters that neither Tucker and Marsh's 2015 warranty deed nor the 1993 subdivision plat for the lake referenced in the deed conveyed any rights to the lake because a 1987 deed in their chain of title explicitly incorporated covenants restricting use of the lake. And so, BLE claims that it retains the power to revoke Tucker and Marsh's access to the lake.[11] But a review of the relevant deeds and covenants belies this contention.

---

[10] *See Higgins*, 246 Ga. at 310 (reversing trial court's ruling that lake's owner could restrict access and appellant had no right to access the lake because "[w]hen a developer sells lots according to a subdivision plat, which has a lake area designated on it, the purchasers acquire an irrevocable easement in that park, with which the developer may not interfere"); *Walker*, 236 Ga. at 331-32 (holding that the developer of property granted an easement to use lake to the property owners lots when developer sold lots according to a recorded plat that included the lake, and thus, the trial court properly enjoined any interference with that right by the developer, as a matter of law); *Patterson v. Powell*, 257 Ga. App. 336, 338 (571 SE2d 400) (2002) (concluding that because subdivision was created around lake and lake was designated on the subdivision plat, landowners in the subdivision were expressly granted rights of access to and use of the lake, which they acquired express easements).

[11] *See Roth v. Connor*, 235 Ga. App. 866, 869 (1) (b) (510 SE2d 550) (1998) ("When a grantee accepts a deed he will be bound by the covenants contained therein . . ." (punctuation omitted)).

The construction of a deed presents a question of law which this Court reviews *de novo*.[12] And in construing a deed, our overriding goal is to "ascertain and give effect to the intent of the parties."[13] Furthermore, and importantly, the intent of the parties *must* be determined from "the deed's text alone, and extrinsic evidence will be admitted to interpret the deed only [when] the deed's text is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction."[14] Critically, when a restrictive covenant in a deed is involved, the "legal presumption is in favor of the free use of the property by its owner, and any doubt will be construed in favor of the owner."[15]

In this matter, the deed BLE argues incorporates the restrictive covenants in Tucker and Marsh's chain of title is a June 26, 1987 warranty deed from Irvin A. Brannen, Jr. to Lynda B. Williamson and L. Hughes Williamson, specifically conveying only Lot 21 and a portion of Lot 22. That deed then further provides that

---

[12] *See Great Water Lanier, LLC v. Summer Crest at Four Seasons on Lanier Homeowners Ass'n, Inc.*, 344 Ga. App. 180, 186 (1) (811 SE2d 1) (2018).

[13] *Second Refuge Church of Our Lord Jesus Christ v. Lollar*, 282 Ga. 721, 724-25 (2) (653 SE2d 462) (2007) (punctuation omitted).

[14] *Id.* at 725 (2) (punctuation omitted).

[15] *Roth*, 235 Ga. App. at 867 (1) (a) (punctuation omitted).

the property is "specifically conveyed subject to the Summary of Conditions and Restrictions for Brannen Lake Properties, a copy of which is attached hereto." Within the attached Summary of Conditions and Restrictions is a section entitled "Easements," and under that section is a provision providing that,

> The deed conveying title to the lot(s) shall not convey any easement in or right to use the waters of Brannen Lake, or to fish therein, swim, boat or otherwise utilize or enjoy said lake. All rights in and to the lake shall be controlled by the owners of the lake. Any utilization of any property beyond the lot lines of the owner shall be deemed permissive and shall create no right, privilege or license.

And while this 1987 warranty deed does not refer to Tucker and Marsh's property, an October 21, 1993 warranty deed from Irvin A. Brannen, Jr. and Caroline Mary Brannen Nesmith to Annie Ursula Brannen Moxley conveys several tracts, including Lot 6, and provides that "[t]his property is conveyed subject to the same terms, conditions, and covenants as are attached to a Warranty Deed from Irvin A. Brannen, Jr. to Lynda B. Williamson and L. Hughes Williamson, dated June 26, 1987 . . . ." As a result, BLE argues Tucker and Marsh had constructive notice that their property,

Lot 6, described in their 2015 deed was subject to the Summary of Conditions and Restrictions attached to that 1987 deed.[16]

But this argument elides crucial language from the Summary of Conditions and Restrictions. Indeed, in addition to the 1987 deed specifically referring only to Lot 21 and a portion of Lot 22, the first page of the Summary of Conditions and Restrictions provides that Irvin A. Brannen, Jr., Annie Ursula Brannen, and Caroline Mary Brannen Nesmith are owners of Brannen Lake located on land described in an attached Exhibit "A." The Summary next notes that "[t]hese conditions and restrictions shall be applied to *a portion* of the land described on Exhibit 'A'" before then describing Lot 21 and the portion of Lot 22 in detail.[17] Immediately thereafter, the Summary provides that "[t]hese conditions and restrictions are not applicable to *any other portions of the property* of The Owners described in Exhibit 'A' or otherwise."[18] And significantly, Exhibit "A" specifically refers to Lot 6 in its description of the

---

[16] *See Hendley*, 253 Ga. at 137 (noting that recorded deeds and covenants provide purchasers with constructive notice of such covenants); *Gamble v. Brooks*, 170 Ga. 662, 662 (153 SE 759) (1930) (explaining that a recorded deed that is a link in the purchaser's chain of title provides constructive notice of the contents of the deed).

[17] (Emphasis supplied).

[18] (Emphasis supplied).

property in its entirety. Consequently, although the October 21, 1993 deed refers to Lot 6 and the Summary of Conditions and Restrictions, a purchaser's review of the actual language in the Summary leads to a conclusion that it did not apply to Lot 6 or, at the very least, confusion as to its scope. Crucially, restriction on the use of land "must be clearly established, not only as to the restrictions, but also as to the land restricted, and restrictions will be strictly construed."[19] Accordingly, the seemingly contradictory language between the October 21, 1993 deed and the Summary of Conditions and Restrictions as to the property subject to those conditions and restrictions cannot not justify terminating Tucker and Marsh's use of the lake—especially in light of the Brannen Lake subdivision plat explicitly referenced in their 2015 deed.[20]

For all these reasons, we reverse the trial court's declaratory judgment grant in favor of BLE.

*Judgment reversed. Rickman and Pipkin, JJ., concur.*

---

[19] *Roth*, 235 Ga. App. at 867 (1) (a); *see Grave de Peralta v. Blackberry Mountain Ass'n, Inc.*, 315 Ga. App. 315, 318-19 (726 SE2d 789) (2012) (holding neighborhood covenant did not clearly prohibit homeowners from renting out their property for periods of only a few days at a time and, thus, could not be enforced in that regard).

[20] *See supra* note 10 & accompanying text.